GREENVILLE COMPRESS & WAREHOUSE COMPANY *v.* PLANTERS' COMPRESS & WAREHOUSE COMPANY.

1. PRIVATE CORPORATION. *Power of directors. Consolidation.*

In the absence of authority conferred by their charters, an agreement between the directors of corporations to consolidate and merge the two into a new corporation is *ultra vires.*

2. SAME. *Ultra vires agreement. Part performance. Remedy.*

Although such invalid agreement has been partly performed, no action will lie on the agreement itself, nor can it be specifically enforced, but, to the extent that one of the corporations has received a benefit from its partial execution, the other, by proper proceedings, may recover of it.

3. SAME. *Invalid agreement. Part performance. Relief. Case.*

An agreement was made between the directors of two compress companies to merge both into a new corporation. Pending this, a joint committee took control and managed both properties, dividing the profits. The stockholders of one company refused to ratify this, and it withdrew from the arrangement, and resumed control of its property. Thereupon, the other company filed a bill to enjoin interference with the committee's control, and the injunction was issued, to continue, however, only to the end of the cotton season. The members of the committee were not made parties. The defendant, by cross-bill, prayed for an accounting. On final hearing, complainant meantime having, through the committee and independently of the suit, obtained the desired relief, the bill was dismissed. *Held,* error. The suit should have been retained, not to enforce the invalid agreement, but that an account might be taken as to any benefit received by either party from its partial execution.

FROM the chancery court of Washington county.

HON. W. R. TRIGG, Chancellor.

Prior to 1891, the Greenville Compress & Warehouse Company and the Planters' Compress & Warehouse Company, corporations having charters under the laws of this state, owned and operated, each on its own account, a cotton compress and warehouse in the city of Greenville. In the spring of 1891 they conceived the idea of merging the two corporations into one, and a joint committee was appointed by the directors to devise a plan for consolidation. The plan agreed upon was that a new corporation should be chartered, to be known as the Greenville Cotton Press Association, and into this both corporations were to be merged, the property of the first-named company to be taken at a valuation of $100,000, and that of the latter at $90,000. This plan was reported to the officers of both corporations by their respective committees, and was approved by the directors of each; but this action of the directors was agreed to be submitted for ratification to the stockholders of each company, at a meeting to be held on the twentieth of August, 1891. At that time the stockholders of each corporation met, and the action of the directors, in agreeing to the terms of consolidation, was approved, but no notice of the meeting had been given to the stockholders of the appellant company, and many were not represented. Acting under the authority thus thought to have been properly conferred, the directors of the two corporations met, and passed a resolution directing that both compresses and warehouses should be put into the hands of a joint committee, named by them at the time, and consisting mainly of the directors of the two corporations. This committee was authorized to take such steps as it saw proper to accomplish the consolidation, and meantime to manage the property and affairs of both corporations, dividing the profits in the proportion above stated.

The committee accordingly took possession, and, inasmuch as it was found that one compress was sufficient to do the work of both, as a matter of economy, the committee operated one of the compresses and warehouses—that of the

Greenville Compress & Warehouse Company—and leased the other to third parties. The committee continued this joint management until early in November, and realized a large amount of net earnings, which were divided between the two corporations, as agreed, each accepting the division and apportionment. The result of this course was, that the business and patronage were diverted from the Planters' Compress & Warehouse Company to that of the Greenville Compress & Warehouse Company, operated by the committee. Meantime, it was ascertained that the meeting of the stockholders of the Greenville Compress & Warehouse Company, at which the action of the directors was approved, had been called without any previous notice to to the stockholders. Accordingly, early in November, pursuant to a call for a second meeting of stockholders, and after due notice to them, the stockholders of said company met and refused to ratify the action of the directors, and voted against the consolidation. Thereupon, the directors of said company passed a resolution reciting that, as its stockholders had refused to ratify the plan for a consolidation, and, as the Planters' Compress & Warehouse Company had been closed down for the season, it was equitable and just that the latter company should have a share of the profits of compressing during the current cotton season, and an offer was made to pay to said company two-fifths of the net earnings of the season. This offer was communicated to the Planters' Compress & Warehouse Company, but was not accepted. Thereupon, the Greenville Compress & Warehouse Company, on November 10, 1891, resumed possession and control of its property, and begun to operate its compress and warehouse on its own account, ignoring entirely the joint committee. This continued until November 21, when the Planters' Compress & Warehouse Company filed this bill against the Greenville Compress & Warehouse Company and the members of its board of directors, to enjoin further interference with the management and control of the joint

committee until the close of the current cotton season, or until the plan for consolidation could be carried out by the formation of a new corporation, and the merging therein of both companies. The bill also prayed an account of moneys received by the defendant from the tenth of November, the time when it resumed control, until the filing of the bill. An injunction was issued as prayed for, restraining the defendants from any interference with the joint committee, as then constituted and as might thereafter be constituted, until the closing of the cotton season, and until the consolidation of the two corporations could be effected. Under the protection of this injunction, the joint committee again took possession of all the property of the Greenville Compress & Warehouse Company, and controlled and operated it during the fall and winter.

The defendant answered, alleging the invalidity of the action of the directors of the two companies, and that the attempted effort to consolidate the two companies had been properly repudiated by the stockholders of the defendant. It is unnecessary to state the many other matters relied on by complainant and defendant, and set out in the pleadings. The charters of the two companies were introduced in evidence, and showed that neither conferred the power to make such consolidation. The answer was made a cross-bill, and an account asked to be taken of the moneys up to that time paid, or that might thereafter be paid, by the joint committee to the complainant, as dividends or otherwise, and that the amount so ascertained be decreed to be paid to the defendant.

Subsequently, in February, 1892, the injunction previously issued was modified and dissolved, so far as it sought to compel the defendant to enter into a new corporation to be formed by consolidation of the two companies. The injunction against interference with the joint committee was decreed to continue until the close of the business year, which was fixed by the court as the first day of June, 1892.

In October, 1892, the court entered a final decree, which

recited that the defendant was not entitled to the relief prayed for in its cross-bill, which was accordingly dismissed; and, further, that it appeared that the complainants were entitled to the relief prayed for, so far as it sought to enforce the agreement entered into between the board of directors and the two companies during the season ending June 1, 1892, and the injunction previously issued was to that extent perpetuated. The decree further recited that, as the relief for which complainant prayed, and to which it was entitled, had been already obtained, the bill was dismissed at defendant's costs. From this decree defendant appeals.

*Phelps & Larkin*, for appellant.

1. Neither the directors of a corporation nor the majority of its stockholders have the power to sell its entire property and stop its business, unless the business is a failing one, and then only by sale for cash, and not for stock in a new enterprise. 1 Beach on Private Corporations, §§ 229, 357, 359; Waterman on Corporations, § 125; Cook on Stock and Stockholders, §§ 667, 668.

2. A single dissenting stockholder can forbid the consolidation of the corporation. 1 Beach on Private Corporations, § 353; 2 *Ib.*, § 430; Cook on Stock and Stockholders, § 671; *Railroad Co.* v. *Harris*, 27 Miss., 517; 18 Wall., 233; 21 How., 441. The agreement for consolidation being void, appellant was justified in assuming control of its property.

3. It cannot be contended that appellant was estopped to resume possession of its press and business. The doctrine of estoppel does not apply in matters *ultra vires*. It can be invoked only in cases where the corporation has actually received property or money from another which it would be inequitable to hold. Even in such cases relief is confined strictly to executed contracts. *Thomas* v. *Railroad Co.*, 101 U. S., 71. An *ultra vires* contract cannot, by partial performance, become a foundation of a right of action. *Penn Co.* v. *Railroad Co.*, 118 U. S., 290; *Pearce* v. *Railroad Co.*, 22

How., 441. The underlying principle of those cases which afford relief in connection with contracts *ultra vires* is that of restitution—restoration of the *status quo.* 131 U. S., 371; 139 *Ib.*, 24; *Davis* v. *Railroad Co.*, 131 Mass., 258.

*Skinner & Lewenthal,* on the same side.

1. If the agreement be enforceable at all, it must be enforced according to its terms and tenor. If that cannot be done, the court will not make a new contract for the parties. *Liddell* v. *Sims,* 9 Smed. & M., 596. The contract was that the partnership should continue only until the consolidation could be effected. The court below held that the agreement to consolidate could not legally be carried out. It was error, therefore, to continue the partnership during the cotton season. The court could not make a new contract for the parties and decree its specific performance. Equity will not enforce contracts unless they are certain. *Montgomery* v. *Norris,* 1 How. (Miss.), 506; 3 Pom. Eq. Jur., 449.

2. The directors had no authority to make the agreement. It worked a radical change in the affairs of the corporation. It absolved the directors themselves from the responsibility placed on them by the stockholders; and, finally, it forces upon the stockholders directors not selected by them.

Complainants cannot claim that they acted in good faith without notice. The obstacles presented are matters of law, and not fact. Every one dealing with directors must know their authority. Wade on Notice; 24 How., 441; 4 Am. & Eng. Enc. L., 247.

*Jayne & Watson,* for appellee.

The doctrine of *ultra vires* cannot be invoked by the defendant. There is a difference in the application of the term in different contracts, and in its general sense, as well as in its application to municipal, as distinguished from private, corporations. It does not follow that, because the exercise of corporate power is prohibited by the common law, any corpo-

rate acts performed in violation of this prohibition will not be recognized by the law as corporate acts. It may even subject the parties to a penalty, yet be recognized by the courts, and given effect after it is consummated. Morawetz on Priv. Corp., § 648. Where stockholders waive this right, under a charter, and acquiesce in corporate acts done by the directors, they cannot complain. *Ib.*, § 654. Private corporations are held more strictly to their contracts than public ones. The contract in this case did not change the policy or line of business of the companies. The business continued to be the compressment and warehousing of cotton. The contract had been fully executed. Each company had turned over all its property to the committee, and had acquiesced in its management, and accepted the dividends upon a fixed basis.

The doctrine of *ultra vires* cannot be invoked for or against a corporation when it would defeat the ends of justice and work a legal wrong. 96 U. S., 258; 22 Cal., 620; 29 N. J. Eq., 542; 102 U. S., 420; 107 *Ib.*, 100; 48 Am. R., 271; 78 N. Y., 597. It is clearly shown that to apply the rule in this case would work irreparable harm to appellee. Its compress has been shut down, its force disbanded, and the season's business lost, and the patronage diverted to the other compress. It was impossible for equity to have been done, except by order of the court.

A private corporation will not be allowed to interpose the plea of *ultra vires* when its contracts have been performed by the other party, and the corporation has had the benefit of the contract and its performance. 48 N. J. Law, 530; 96 U. S., 258. See also *Prairie Lodge* v. *Smith*, 58 Miss., 301; *Gilliam* v. *Brown*, 43 *Ib.*, 641.

The performance of the contract was properly decreed. Even if originally unauthorized, it will be enforced under the special circumstances of this case. A corporation may be compelled to make compensation for the breach of an unauthorized contract, if the other contracting party had no

notice of the illegality, or if the contract has been executed. Morawetz, § 684. Nothing in the record suggested to appellee the want of power in the directors of the appellant company to contract.

The cross-bill made no tender to appellee of its losses. It did not offer to do equity, and was properly dismissed. Pom. Eq. Jur., § 388; 64 Miss., 195; 67 *Ib.*, 136.

COOPER, J., delivered the opinion of the court.

The agreement between the directors of the respective companies was clearly beyond the corporate powers of either company to make, and it had not been fully executed when the appellant withdrew from it. There are some decisions which proceed on the apparent postulate that an *ultra vires* agreement, executed fully by one of the corporations, or so far executed that the *status quo* cannot be restored, may be made the basis of an action. But in many of these cases it will be found that the measure of recovery would be the same, whether the injury done to the plaintiff by the failure of the defendant to perform, or the benefit received by the defendant under the agreement, is taken as the standard. Cases of this sort may therefore be well assigned to that other and far more numerous class, in which the right of recovery is not rested upon the invalid agreement, but is recognized to exist notwithstanding the agreement, upon the principle that the defendant may not repudiate the contract and yet retain the benefit which has been derived under it.

The decided weight of authority in England and America is that no action lies upon the invalid contract, that no decree can be made by a court of equity for its specific performance, nor a recovery had at law for its breach; but that, by proceeding in the proper court, the plaintiff may recover to the extent of the benefit received by the defendant from the execution of the agreement by the plaintiff. *Penn Co.* v. *Railroad Co.*, 118 U. S., 290; *Davis* v. *Railroad Co.*, 131 Mass., 258; *Pearce* v. *Railroad Co.*, 21 How., 441;

*Ashbury Railroad, etc., Co.* v. *Riche,* L. R., 7 H. L., 653; 9 Ex., 224; *In re Cork* v. *Foughal,* L. R., 4 Chy., 748.

The chancellor, by the very extraordinary course pursued in this case, has not only specifically executed the *ultra vires* agreement, but has done it by a peremptory injunction, by taking the property of the appellant from its possession and turning it over to persons not parties to the suit, and who were not appointed receivers of the court. At the final hearing the court found itself in the anomalous position of not being in condition to afford relief by final decree, because, pending the suit, the complainant had worked out its own redress by receiving from the "joint committee" provided for by the agreement which it relies on, its proportion of the proceeds of the enterprise. The court therefore dismissed the complainant's bill, but taxed the defendant with the costs.

It is to be regretted that an amicable settlement was not agreed on by the parties. The complainant should have promptly accepted the offer made by the defendant, to allow it two-fifths of the net proceeds of the season's work. In view of the condition in which the matter has been brought by the course pursued by the court below, it may be difficult to reach a complete settlement along strictly legal lines. The extent of the right of complainant is sufficiently indicated by what we have said. We will not now attempt to direct in what manner the account shall be taken, but will only reverse the decree, and remand the cause for further proceedings.

*Reversed and remanded.*