ALTENBERG et al. v. GRANT et al.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1898.)

No. 466.

1. CORPORATIONS—FICTITIOUS CAPITALIZATION—CONSTITUTIONAL RESTRICTIONS.
   Under the Kentucky constitution, declaring fictitious increase of stock or indebtedness void, and forbidding the acceptance of labor or property in payment of stock or bonds "at a greater value than the market price at the time the said labor was done or property delivered," stock and bonds can only be issued in exchange for work or property when the market price thereof is equal to the par value of the bonds or stock so exchanged. Railroad Co. v. Dow, 7 Sup. Ct. 482, 120 U. S. 287, distinguished.

2. SAME—PRESUMPTIONS.
   A contract between the majority stockholders of a Kentucky corporation and certain brokers, for the reorganization of the corporation on a plan which would render it illegal under the Kentucky law, as creating a fictitious increase of stock, cannot be presumed to contemplate a reorganization under the laws of some other state, wherein such a reorganization might be valid, when it appears that the owners of the majority of stock in the old corporation were residents of Kentucky, that the business of the new corporation was to be carried on in Kentucky and was to be of a quasi public character, and that the contract was made and signed in Kentucky.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was an action at law by P. G. Altenberg and Rudolph Kleybolte against W. T. Grant and others to recover damages for breach of contract. There was a judgment for defendants in the circuit court, and the plaintiffs sued out this writ of error. A motion to dismiss the writ of error was heretofore denied by this court. 83 Fed. 980. The case is now heard on the merits.

L. J. Crawford, for plaintiffs in error.

W. O. Harris and Humphrey & Davie, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge. This is a writ of error to a judgment of the circuit court for the district of Kentucky. The action was for damages for a breach of a contract. After the plaintiffs had introduced their evidence, the court directed a verdict for the defendants, on the ground that the contract was for an illegal purpose, and could not give rise to a cause of action for its breach. The contract was between the owners of a majority of the stock of the Citizens Electric Light & Power Company of Louisville, Ky., of the one part, and the plaintiffs, stockbrokers of Cincinnati and promoters, of the other part, and provided for the reorganization of the company, or the organization of a new company, upon a plan set forth in the agreement. The new company was to issue $200,000 in mortgage bonds, $65,000 in preferred stock, and $235,000 in common stock. The assets of the old company were to be turned over to the new company in consideration of the delivery to its stockholders of the whole issue of preferred stock in the new company, and to its bondholders of $50,000 of the bonds of the

new company. The plaintiffs agreed to sell $100,000 of the remaining bonds for $90,000. The $235,000 of common stock was to be issued to the plaintiffs for their services in the reorganization and in the sale of bonds. The defendants were unable to procure the consent of their fellow stockholders in the old company to proceed under the plan, and so notified the plaintiffs, who at once brought suit for breach of contract, and fixed their damages at $101,500. This sum included $1,500 of disbursements made by plaintiffs on the faith of the contract. One of the plaintiffs testified that their services, if performed under the contract, would have been worth $20,000 in cash.

Section 193 of the constitution of Kentucky provides that:

"No corporation shall issue stock or bonds except for an equivalent in money paid, or labor done, or property actually received and applied to the purposes for which such corporation was created, and neither labor nor property shall be received in payment of stock or bonds at a greater value than the market price at the time the said labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void."

The learned judge at the circuit held that the contract in this case was for an illegal purpose, because an execution of it would be in violation of this section. We concur in this view. The obvious meaning of the section is that stock and bonds shall only be issued in exchange for work or property when the market price of the labor or property shall be equal to the par value of the bonds or stock exchanged. It has been contended that the market price referred to in the section is the market price of the stock to be issued, and that, if it appears that the work done or property delivered is equal to this market price, the purpose of the section is fulfilled. This would be to render the section nugatory, and would justify a corporation in issuing stock for nothing, if it appeared to have no value in the market. It would thus defeat the plain intent of the section, which was to make the stock and bonds of a corporation worth their face value. The great abuses which have been perpetrated, and the deceits which have been practiced upon the public, in the organization of corporations by the issue of stock and bonds, the par value of which has been grossly in excess of the real capital embarked in their business, are too well known to require comment. The framers of this section, and the people, who adopted it, proposed to remedy these abuses by a specific requirement that no one should acquire stock or bonds from the corporation without having contributed to the capital, available for carrying on its business, cash or its full equivalent in labor or property equal to the par of the stock or bonds received. It is the duty of the court to construe and enforce the section so as to remedy as far as possible the evil at which it was directed.

By the contract before us the plaintiffs were to receive $235,000 of the full-paid common stock of the company for services which even the plaintiffs would not estimate to be worth more than $20,000 in cash. If the section of the constitution does not forbid an exchange of stock for such a grossly inadequate consideration, it is hard to see what application it has. To avoid this construction of the Kentucky constitution, plaintiffs rely on the decision of the supreme court of the United States in Railroad Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482. In that

case the court was construing a clause in the constitution of Arkansas which reads thus:

"No private corporation shall issue stock or bonds except for money or property actually received, or labor done; and all fictitious increase of stock or indebtedness shall be void."

It was held that this did not prevent the carrying out of an agreement between the mortgage bondholders of an embarrassed railroad company in that state, by which the bondholders should buy in the road at foreclosure, and convey it to a new company, which should issue the same amount of securities, in stock and bonds, to pay the expenses and take up the old indebtedness which the old company had before the foreclosure and before the adoption of the constitution. It was held that this was not a fictitious increase of indebtedness, within the clause above quoted. It was further held that it was not intended by the clause to make the validity of every issue of stock or bonds depend on the inquiry whether the money, property, or labor actually received therefor was of equal value in the market with the stock or bonds so issued, and that it was not clear that it was intended to restrict corporations in exchanging stock and bonds for money, labor, or property upon such terms as they deemed proper, provided, always, the transaction was a real one, based upon a present consideration, and having reference to legitimate corporate purposes, and not a mere device to evade the law, and accomplish that which was forbidden.

The same construction was put upon a clause in the same words in the Illinois constitution by the supreme court of that state. Railroad Co. v. Thompson, 103 Ill. 187, 201.

The reason why these two cases have no application in this case is that the clause in the Kentucky constitution contains words which do show the intention on the part of the framers and adopters of it to make the validity of every issue of stock depend on the inquiry whether that which is received for it is of equal value in the market with the stock or bonds issued. The words of the Kentucky clause, not found in that of Arkansas, are:

"And neither labor nor property shall be received in payment of stock or bonds at a greater value than the market price at the time when the said labor was done or property delivered."

It would seem that this addition was made in the light of the opinion in the Dow Case, and in order to secure a different construction by the courts from that given to the Arkansas constitution.

But it is said that, if the contract cannot be held valid under Kentucky law, it is the duty of the court, "ut res magis valeat quam pereat," to presume that the parties intended to organize the new corporation under the laws of some other state than Kentucky, in which an issue of full-paid stock for a consideration equal in money to less than 10 per cent. of its par value would be regarded as proper and valid. We cannot indulge such a presumption. The old corporation, which was to be reorganized or absorbed by a new corporation, was a Kentucky corporation; the owners of a majority of the stock of the old corporation were residents of Kentucky; the business of the new corporation was to be carried on in Kentucky, and it was to be of a quasi public character; and, finally, the contract was made and signed in Kentucky.

From these circumstances, we have no doubt as to the fact that the parties intended to form a Kentucky corporation. In Liverpool G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 460, 9 Sup. Ct. 469, the issue was whether a stipulation in a contract of affreightment that a carrier should not be liable for the negligence of his servants was void. According to the law of this country, as declared by the supreme court, such a stipulation was invalid. According to the law of England, where one of the parties lived, and where the goods were to be delivered under the contract, it was valid. It was urged upon the court that it should infer that the stipulation was entered into by the parties, intending to be governed by the law of England, because by that law it would be valid; but the supreme court held that the circumstances that the shipper was an American, and was not presumed to know the law of England, and that the contract was made in New York, prevented such an inference. Here we think the circumstances point too strongly to the intention to form a Kentucky corporation to allow us to make any other inference.

The judgment of the circuit court is affirmed.