# WEBSTER v. WEBSTER REFINING CO. OF OKMULGEE.

No. 2242.   Opinion Filed November 19, 1912.

(128 Pac. 261.)

1.   CORPORATIONS—Issuance of Stock—Consideration—"Property Received." Under section 39 of article 9 of the Constitution, which provides that "no corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, * * * *" the right to use a party's name in organizing a corporation, and a method of refining gasoline, which was not patented, which was in use at a number of other places, and which was the result of a method of construction used by the plaintiff wherever he built refineries, is not property actually received to the amount of the par value thereof, for which capital stock of the corporation should be issued.

2.    **SAME.** A contract between a corporation and its promoter, providing for the issuance to him of capital stock of the corporation in violation of section 39 of article 9 of the Constitution, will not be enforced by the courts; nor will damages be awarded for the breach thereof.

(Syllabus by Ames, C.)

*Error from District Court, Okmulgee County;*
*W. L. Barnum, Judge.*

Action by C. D. Webster against the Webster Refining Company of Okmulgee. Judgment for defendant, and plaintiff brings error. Affirmed.

*Merwine & Newhouse,* for plaintiff in error.

*Belford & Hiatt,* for defendant in error.

Opinion by AMES, C. The plaintiff was instrumental in promoting and organizing the defendant corporation. He had had many years of experience in building refineries, and entered into an agreement with the others, who proposed to form the corporation, pursuant to which they were to pay him a salary as general manager, during the construction of a plant, and $5,000 par value of the capital stock of the corporation for the use of his name, processes, and knowledge in erecting the refinery. The minutes of the corporation disclosing the agreement are as follows:

"The next business was the fixing the salaries of the active managers of the business. It was voted to pay the Gen. Mgr. a salary of $25.00 per week until further action is taken, and it was decided to defer taking action on the salaries of the other active mgrs. until future meeting. The Treas. was directed to make an assessment of 25 per cent. on the stock subscribed. A motion was made and carried that C. D. Webster was to be given 200 shares, *i. e.,* $5,000.00 worth, of the capital stock of the company full paid, for the use of his name, processes and knowledge in erecting the refinery, same to issue at once and held in escrow by the treasurer until further action is taken by the board of directors."

The general manager here referred to was the plaintiff. The testimony shows that he superintended the erection of the refin-

ery, and that the corporation was organized with the use of his name; that during the erection he was paid a salary as general manager; that the plant which he erected contained what he calls. his process for refining gasoline; that this was a process which he installed in all the plants which he had ever erected; that it had been a success; that some other refineries have copied it; that it was not patented; that it was not a secret formula, but a mere process in use in many plants, and one that might be used in any plant; that the plaintiff instructed all the men under him concerning the use of his process, and it appears that there was no secret property right in it. After the plant was completed, the company declined to deliver him the capital stock,. and he brings this action to recover damages for the breach of the contract. Upon the conclusion of the plaintiff's evidence the court sustained a demurrer thereto, and judgment was entered for the defendant.

The case involves the construction of section 39 of article 9 of the Constitution, which provides as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness. shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after thirty days' notice given in pursuance of law."

In the case at bar the plaintiff does not contend that he paid the money for this stock. The labor which he performed was. paid for by his salary as general manager; and there was therefore no "labor done" for which the stock should be issued. Was there any "property actually received" by the corporation for which it should have issued the stock? It is elementary that the plaintiff's name was not "property actually received." Naming the corporation for him would not pay its debts or satisfy its creditors. The only other thing which the corporation received was his process for refining gasoline; but this was not a

patented process. It was not even a secret formula. It was merely a method of construction which he used wherever he was employed to build a refinery, and which could be used by any one else who knew it, or who could find it out from the many people who did know it. It was not a process which resulted in making more or better gasoline, although the evidence is to the effect that it was a good process. But it cannot be said that the evidence showed that it was of actual value, or that it was property actually received. Indeed, it has been held in Texas, in *O'Bear-Nester Glass Co. v. Anti-Explo. Co.*, 101 Tex. 431, 108 S. W. 967, 109 S. W. 931, 16 L. R. A. (N. S.) 520, 130 Am. St. Rep. 865, that an unpatented formula is not property, within the meaning of a constitutional provision that no corporation shall issue stock, except for property actually received; and in *Gillett v. Chicago Title & Trust Co.*, 230 Ill., 273, 82 N. E. 891, it was held that the transfer of unpatented and unperfected inventions, to be used in the production of a proposed spectacular play, was a violation of the statute requiring stock to be paid for in money or money's worth to the full amount of the subscription; and in *National Tube-Works Co. v. Gilfillan*, 124 N. Y. 302, 26 N. E. 538, recovery by a judgment creditor against the stockholder was sustained, on the ground that the stock was not properly paid for by a transfer to the corporation of a number of patented inventions. In *Van Cleve v. Berkey*, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593, it was held that the transfer to a company of an invention for an improved process for manufacturing flour, which subsequently proved to be of no value, could not be taken as payment for the capital stock of the company, under a statute similar to ours. It is not necessary for us to go so far as some of the courts have gone, because in the case at bar it is manifest that the corporation did not receive money, or labor, or actual property to the extent of the par value of the stock.

The evil which this constitutional provision was designed to stop was the so-called practice of watering stock of a corporation; and it is both our duty and our disposition to give this statute its natural construction—the meaning which its words plainly disclose. The corporation is prohibited from issuing stock

except for money, for labor done, or for property actually received to the amount of the par value thereof. These words have a very plain significance. They mean just what they say. Our attention is, however, called to the decision of the Supreme Court of the United States, in *Memphis & Little Rock R. Co. v. Dow,* 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595, which construes section 8 of article 12 of the Constitution of Arkansas of 1874, providing that "no private corporation shall issue stock or bonds, except for money or property actually received, or labor done, and all fictitious increase of stock or indebtedness shall be void," in which Justice Harlan, in delivering the opinion of the court, says (120 U. S. 299, 7 Sup. Ct. 487, 30 L. Ed. 600) :

"Referring to the language employed in the Arkansas Constitution, we are of opinion that it does not necessarily indicate a purpose to make the validity of every issue of stock or bonds by a private corporation depend upon the inquiry whether the money, property, or labor actually received therefor was of equal value in the market with the stock or bonds so issued. It is not clear from the words used that the framers of that instrument intended to restrict private corporations—at least when acting with the approval of their stockholders—in the exchange of their stock or bonds for money, property or labor upon such terms as they deem proper, provided, always, the transaction is a real one, based upon a present consideration, and having reference to legitimate corporate purposes, and is not a mere device to evade the law and accomplish that which is forbidden. We cannot suppose that the scheme whereby the appellant acquired the property, rights, and privileges in question for a given amount of its stock and bonds falls within the prohibition of the state Constitution. The beneficial owners of such interests had the right to fix the terms upon which they would surrender those interests to the corporation of which they were to be the sole stockholders. And, that subsequent holders of stock might not be misled, each certificate of stock states upon its face that 'the holder takes this stock subject to $2,850,000 of mortgage bonds of the company, which are secured by two mortgages duly recorded.' All that was done was to reorganize the Little Rock & Memphis Railroad Company upon the same basis, substantially, as to capital stock and bonded indebtedness, as existed in respect to these properties, rights, and privileges before the adoption of the state Constitution, and while they were held and controlled by the companies which preceded the appellant in the ownership. There was con-

sequently no fictitious increase by appellant of its stock or indebtedness. Under these circumstances it cannot be fairly said that the bonds secured by the mortgage were issued without any consideration whatever actually received in property."

It will be observed, however, that our Constitution goes a step further than that section of the Arkansas Constitution which was construed in that case. There it was held that, as the stock was issued for property actually received, and as the transaction was in good faith, it will be sustained. Our Constitution, however, inserts the words, "to the amount of the par value thereof," which are not found in the Arkansas Constitution, and which were inserted to prevent doubt upon the proposition.

The Alabama Constitution (1875, article 14, sec. 6) had a similar provision, omitting the words, "to the amount of the par value thereof." In *Fitzpatrick v. Dispatch Publishing Co.*, 83 Ala. 604, 2 South. 727, an action was sustained by a stockholder to restrain the corporation from issuing a stock dividend on a mere statement that the capital had been invested in property which had more than doubled in value. In *Williams v. Evans*, 87 Ala. 725, 6 South, 702, 6 L. R. A. 218, it was held that an agreement between a corporation and a subscriber for stock that $5 of stock should be issued for $1 of money was void, and that a sale by the subscriber of a portion of his subscription to one having knowledge was likewise void, and that an action would not lie for damages for breach of the contract. In *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.*, 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65, it was held that at the suit of a creditor persons who had taken stock and paid for it in property manifestly worth a great deal less than the par value of the stock could be required to respond for the unpaid portion of their subscription, although the courts would allow a margin for honest differences of opinion as to value. In *Alabama Nat. Bank v. Halsey*, 109 Ala. 196, 19 South. 522, recovery was refused upon a note given for stock to be afterwards issued to the maker at the ratio of $2 in stock for $1 in investment, on the ground that the performance or consummation of the contract necessarily involved a violation of the con-

stitutional provision quoted; and therefore that the original note and renewals thereof were illegal and void.

We conclude, therefore, that as the contract in the case at bar was to deliver stock for something which was not of value, much less of the par value of the stock, that the agreement was in violation of our Constitutional provision.

It is, however, earnestly contended that, even if this be true, the parties to the agreement cannot take advantage of it, but that it is only subject to attack by creditors, and in support of this position *First Nat. Bank v. Cornell*, 8 Hun. (N. Y.) 427, *Dickerman v. Northern Trust Co.*, 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423, *Scovill v. Thayer*, 105 U. S. 143, 26 L. Ed. 968, and *Parmlee v. Price*, 208 Ill. 544, 70 N. E. 725, are cited. *First Nat. Bank v. Cornell*, instead of being 8 Hun. 427, should be 8 App. Div. 427, 40 N. Y. Supp. 850. It does not support the position of the plaintiff, as appears from the syllabus, which reads as follows:

"A note received by a corporation in violation of Laws 1892, c. 688, sec. 42, which forbids a corporation to issue stock, except for money, labor, or property, is nevertheless valid in the hands of a person who advanced money to the corporation on the faith of the note; and therefore the obligation of the corporation for the money advanced is one for which the directors are liable, where they fail to file the annual report, as required by Laws 1892, c. 688, sec. 30."

In *Scoville v. Thayer*, 105 U. S. 143, 26 L. Ed. 968, *supra*, the court held that stockholders who had only paid 20 per cent. of the par value of their stock were liable for the difference to the creditors of the corporation, but stated:

"The same contract was made with all the other shareholders, and the fact was known to all. As between them and the company, this was a perfectly valid agreement. It was not forbidden by the charter of the company or by any law or public policy, and, as between the company and its stockholders, was just as binding as if it had been expressly authorized by the charter."

The latter part of this quotation shows that it is inapplicable to the case at bar, because here this agreement is forbidden by law, which makes public policy. It is also true that in that case

the transaction had been completed, while in the case at bar it is a suit for a breach of the agreement. In *Dickerman v. Northern Trust Co.*, 176 U. S. 181, 20 Sup. Ct. 311, 44 L. Ed. 423, *supra*, it is held that "a declaration that shares of stock issued as a bonus to purchasers of bonds are fully paid up and unassessable is conclusive in favor of the holders, as against the corporation and its stockholders, when the rights of creditors are not involved." But in that case the transaction was also a completed one, and based upon the proposition that the corporation itself, having issued the stock for less than par, would not be permitted to recover the difference from the stockholder. *Parmlee v. Price*, 208 Ill. 544, 70 N. E. 725, *supra*, seems also to hold that, as between the corporation and the stockholder, fraudulent overvaluation of property is binding, although voidable as to creditors and other stockholders prejudiced thereby.

In the case at bar we are not called upon to determine whether or not, if the defendant had issued to the plaintiff the stock in this case, it could have then recovered from him the difference between the par value of that stock and the value of the property which it received from him. We have to determine the question whether the courts will enforce the agreement of the corporation to deliver stock for property which is a wholly inadequate price, and the delivery of which is prohibited by the Constitution.

The Constitution provides that the corporation shall not issue its stock, except for a consideration equal to the par value thereof. This represents the public policy of the state. It is intended to bind the corporation. It is intended to protect the public. It is intended to put corporations upon a real substantial basis, to prevent the watering of their stock. The Constitution is one instrument of the people. The courts are another. If the courts require a corporation to do that which the Constitution says shall not be done, the judicial arm is antagonistic to the Constitution itself; and it would seem to be a simple proposition that the courts will not compel that to be done which the Constitution prohibits doing. If this be true, then to permit damages for the refusal by the corporation to do it would be to

punish it for refusing to do that which the law says shall not be done, and indirectly would be to compel it to do that which is prohibited.

In *Greenville Compress & Warehouse Co. v. Planters' Compress & Warehouse Co.,* 70 Miss. 669, 13 South. 879, 35 Am. St. Rep. 681, it is said in the syllabus:

"An *ultra vires* contract will not be specifically enforced in equity, nor will an action at law lie thereon; but if it has been partially or completely executed by either of the parties he may, by proceeding in the proper court, recover to the extent of the benefit received by the other party."

In *Garrett v. Kansas City Coal Mining Co.,* 113 Mo. 330, 20 S. W. 965, 35 Am. St. Rep. 713, it is held:

"A contract that a corporation shall issue stock as fully paid up, when, in fact, the payment is intentionally fictitious, is *ultra vires,* and therefore not enforceable in equity. Parties to an illegal agreement stand *in pari delicto,* and neither can enforce the agreement against the other. A party to a contract by which a large amount of paid-up capital stock in a corporation, to be afterwards organized for the development of certain lands, is to be issued to him in exchange for his equitable rights in options on those lands, and for his services in promoting the corporation, cannot procure the enforcement of such contract, where it is apparent on the face of the instrument that his interest in the land and his services, when taken together, are nothing like a fair equivalent for the face value of the stock which he is to receive. Such a contract contravenes the express provisions of the Constitution and statutes of Missouri, as well as the general policy of the law, requiring that the subscribers to corporate stock should pay in money or money's worth."

In *Clarke v. Lincoln Lumber Co.,* 59 Wis. 655, 18 N. W. 492, it is held:

"Under the statute (section 1753, R. S., as amended by chapter 93, Laws 1881) prohibiting the issue of stock by any corporation at less than its par value, and invalidating all stock so issued, a subscriber for stock under an agreement that it shall be issued to him at less than its par value, though his act is not expressly prohibited, is *in pari delicto* with the corporation, and cannot maintain any action upon the contract or recover back money paid under it. Cases in which the contract was not prohibited by law, but was void because of the incapacity of a party, or because not made or evidenced in the manner prescribed, and

in which the contract was declared void by law *as to one party,* in order to protect the other against injustice and oppression, distinguished."

In *Rogers v. Gladiator Gold Min. & Mill. Co.,* 21 S. D. 412, 113 N. W. 86, it is held that an action will not lie against a corporation for breach of its contract to issue stock in violation of a similar constitutional provision.

In *Altenberg v. Grant,* 85 Fed. 345, 29 C. C. A. 185, in which the opinion is written by Circuit Judge Taft, and concurred in by Judge Lurton, now a member of the Supreme Court, a very similar question was involved, and it was held that an action would not lie for damages for breach of a contract to issue stock in violation of a similar constitutional provision. In the opinion it is said at page 346 of 85 Fed., at page 186 of 29 C. C. A.:

"Section 193 of the Constitution of Kentucky provides that 'no corporation shall issue stock or bonds except for an equivalent in money paid, or labor done, or property actually received and applied to the purposes for which such corporation was created, and neither labor nor property shall be received in payment of stock or bonds at a greater value than the market price at the time the said labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void. The learned judge at the circuit held that the contract in this case was for an illegal purpose, because an execution of it would be in violation of this section. We concur in this view. The obvious meaning of the section is that stock and bonds shall only be issued in exchange for work or property when the market price of the labor or property shall be equal to the par value of the bonds or stock exchanged. It has been contended that the market price referred to in the section is the market price of the stock to be issued, and that, if it appears that the work done or property delivered is equal to this market price, the purpose of the section is fulfilled. This would be to render the section nugatory, and would justify a corporation in issuing stock for nothing, if it appeared to have no value in the market. It would thus defeat the plain intent of the section, which was to make the stock and bonds of a corporation worth their face value. The great abuses which have been perpetrated, and the deceits which have been practiced upon the public, in the organization of corporations by the issue of stocks and bonds, the par value of which has been grossly in excess of the real capital embarked

in their business, are too well known to require comment. The framers of this section, and the people who adopted it, proposed to remedy these abuses by a specific requirement that no one should acquire stock or bonds from the corporation without having contributed to the capital, available for carrying on its business, cash, or its full equivalent in labor or property, equal to the par of the stock or bonds received. It is the duty of the court to construe and enforce the section so as to remedy, as far as possible, the evil at which it was directed."

*Williams v. Evans*, 87 Ala. 725, 6 South. 702, 6 L. R. A. 218, and *Alabama Nat. Bank v. Halsey*, 109 Ala. 196, 19 South. 522, involve a similar principle.

We believe, therefore, that under our Constitution such an agreement is prohibited, and that the court should not enforce it directly by compelling the issuance of the stock, or indirectly by giving damages for breach of the contract.

What we have said disposes of the questions involved in the case, and the judgment of the district court should be affirmed.

By the Court: It is so ordered.