## M. V. MOORE & CO. v. GILMORE.

### (Circuit Court of Appeals, Fourth Circuit. May 5, 1914.)

### No. 1224.

BANKRUPTCY (§ 178*)—CLAIMS—CORPORATIONS—STOCK—SALE—VALIDITY.

A bankrupt corporation being in financial difficulties, in January, 1911, it was proposed by defendant majority stockholder to wind up the concern. In September, however, the minority stockholders proposed that the corporation should purchase defendant's majority interest, amounting to $5,100 par value, for $2,000, to which defendant agreed. Five hundred dollars was paid at the time, which was borrowed for the purpose, and the balance was secured by three notes secured by a deed of trust covering all the assets of the corporation. No improvement resulted from the change, and on November 15th the corporation made a general assignment for the benefit of creditors and on December 5th was adjudged an involuntary bankrupt. *Held*, that such transaction in itself operated to render the corporation insolvent, and, though the transaction was without fraud in fact, it was nevertheless fraudulent as against the corporation's creditors, and therefore void as against its trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 221, 264–274, 283, 284; Dec. Dig. § 178.*]

Appeal from the District Court of the United States for the Western District of North Carolina, at Asheville, in Bankruptcy; James E. Boyd, Judge.

Action by Harry M. Gilmore, as trustee in bankruptcy of the Canton Co-operative Company, against M. V. Moore & Co. Judgment for plaintiff, and defendants appeal. Affirmed.

Louis M. Bourne, of Asheville, N. C. (Bourne, Parker & Morrison, and Theodore F. Davidson, all of Asheville, N. C., on the brief), for appellant.

Junius G. Adams, of Asheville, N. C. (Merrimon, Adams & Adams, of Asheville, N. C., on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. This is an appeal from a decree of the above District Court confirming the findings and order of the referee in bankruptcy, which disallowed the claim of appellant.

It appears that the Canton Co-operative Company was a North Carolina corporation, organized April 21, 1910, with an authorized capital of $25,000, but which began business about that time, as its charter permitted, with only $10,000 of its stock, consisting of 1,000 shares, subscribed for and issued. The incorporators were M. V. Moore, W. M. Smathers, and Geo. J. Williamson, who are the members of the firm of M. V. Moore & Co., the appellant. Moore and Smathers were directors of the corporation, the former being also its treasurer and the latter its general manager, and they continued to occupy those positions until the transaction occurred which gave rise to this litigation. During this period the firm of M. V. Moore & Co. held shares to the amount of $5,100, which was a majority of the outstanding stock. M. V. Moore & Co. were located at Asheville, N.

C., and the corporation carried on its mercantile business at Canton, in that state.

For some reason the enterprise was not successful. That this became apparent before the close of the year is evidenced by the fact that in January, 1911, it was proposed by appellant to sell out the stock of goods in bulk and wind up the concern. The other parties in interest were unwilling to take this course, and the business went on, apparently going from bad to worse during the succeeding six months. In the latter part of August matters came to something like a crisis, and various negotiations followed between the majority and minority stockholders. Without reciting the details, it is sufficient to state here that on or about the 5th of September an arrangement was made by which the corporation itself purchased all the shares of stock held by appellant for $2,000. Of this sum $500 was paid at the time, with money borrowed for that purpose, and the balance by three notes of $500 each, payable in 6, 12, and 18 months, with interest, the notes being secured by a deed of trust covering all the property and assets of the corporation. Moore & Co. thereupon retired, and a new management took charge. No improvement resulted from this change, the business further declined, and failure occurred not long afterwards. On the 15th of November the corporation made a general assignment for the benefit of its creditors, and on the 5th of December was adjudged an involuntary bankrupt. In due course of administration the appellant filed proof of debt for the three notes mentioned, and claimed a preference for their full amount under the deed of trust given to secure their payment. The entire claim was disallowed by the referee, as above stated.

It is unnecessary to hold that the members of appellant's firm acted in bad faith, or with any fraudulent design in selling their stock. Nor is it shown that they used any improper persuasion to that end. So far as appears they were no more willing to sell than the other parties were to buy, and the latter very likely thought they were making a good bargain. No inventory was taken, and no reliable measures adopted for getting at the true value of the merchandise then on hand, whether for continuing or closing out the business, or the amount that could be collected from the unpaid book accounts. The only reasonable inference from the record is that neither party realized the actual state of affairs; and that both of them largely overestimated what the belongings of the company were worth for any purpose. In short, there may have been an honest belief on both sides that there was a margin of assets over liabilities, and an honest expectation that the concern would be able to pay its debts and make a success of the business.

But all parties were aware that the corporation was seriously embarrassed; that creditors were pressing, salaries in arrears, taxes unpaid, and a large part of the indebtedness long overdue. Had the truth about the assets been ascertained at the time, it would have shown at best doubtful ability to pay the debts in full, even with good management and the forbearance of creditors; that is to say, it would have shown that the invested capital was nearly all lost and the stock prac-.

tically worthless. That this was the actual situation is found by the referee upon evidence which appears to us convincing. Shortly after the retirement of Moore & Co., the witness Wentz, who is an experienced bookkeeper and accountant, who took part in the negotiations for the purchase of appellant's stock, and who later became the general manager of the corporation, audited the books of the concern and prepared a statement of its financial condition as of September 5, 1911. His testimony recites at some length what was done in that regard, including an inventory and valuation of the merchandise in stock, and a careful estimate of the amount that could be realized from the outstanding accounts. This appraisal shows total assets of less than $100 in excess of liabilities on the date mentioned, exclusive of debts owing to stockholders. No reason appears for doubting that Wentz made an honest and intelligent effort to find out just how the corporation stood, and we regard his appraisal as a conservative and even liberal valuation of the company's assets at the time of the purchase of the stock in question. As might be expected, it proved a good deal more accurate than the estimates and opinions on which the parties apparently acted; and this view is confirmed by the much lower prices which the trustee in bankruptcy was afterwards obliged to accept.

In view of the relations above stated between the buyer and seller of this majority stock, it must be held that Moore & Co., whatever their belief at the time, were chargeable with full knowledge of the financial condition of the corporation, and that their rights are to be determined by the facts which actually existed. The vice of the transaction under review is not found in dishonest intention on their part, but in the distressed situation of the company which operated as matter of law to make what they did a fraud upon creditors. Without adding a dollar to the assets they increased the liabilities some 20 per cent., and got security for the debt so created by a pledge of all the property of the corporation. The necessary effect of this arrangement was to make the concern hopelessly insolvent. The stock they parted with was valueless, and the notes they took had no valid consideration.

To uphold the transaction here disclosed, however free from moral delinquency, and thereby give preference over other creditors to these majority stockholders whose debt is the purchase price of their own shares sold to the corporation itself, when its condition was manifestly precarious, to say the least, would be so contrary to good conscience and common sense that no argument is needed to show that it ought to be condemned. The members of appellant's firm were bound to know, as the event proved, that the concern was on the verge of failure, and the law forbade them to deplete the assets, which belong in equity to the creditors, for the purpose of recovering some part of an otherwise lost investment.

The case, In re Castle Braid Co. (D. C.) 145 Fed. 224, which is referred to at length in appellant's brief, holds nothing whatever inconsistent with the views herein expressed. Not only are the facts materially different, as respects the vital issue in dispute, but the only

question decided was that, under the circumstances there appearing, the proof of debt filed by the claimant made a prima facie case in his favor, and cast the burden of disproof on the trustee. Moreover, the opinion contains a statement of the settled rule of law as follows:

"However, it must be borne in mind that the law looks with a watchful eye upon such a transaction—one between those having the management of a corporation, being directors therein, and occupying a position of trust and confidence, and the corporation itself—especially where such directors are to be benefited in any way, and where, as here, the rights of general creditors are insolved."

The case of Smith Lumber Co. (D. C.) 132 Fed. 618, affirmed in 140 Fed. 988,' 72 C. C. A; 682, is directly in point. The facts are strikingly similar and the question presented identically the same. It is decisive of this case.

However, we see no occasion for reviewing the authorities or otherwise prolonging the discussion. In our judgment, the referee was clearly right is disallowing.appellant's claim, and the decree confirming his decision will therefore be affirmed.