EDGAR v. AMES et al. WRIGHT v. SAME. In re OKLAHOMA CITY TIMES CO.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1919.)

Nos. 4938, 5043.

1. BANKRUPTCY ⊕⇒345—BONDHOLDERS—PRIORITY.

In the administration and distribution of the property of insolvent corporations, the claims of subsequent creditors without notice are superior, and entitled to preference in payment over the holders with notice of mortgage bonds of the corporation, whose only consideration was the purchase by the mortgagor corporation of its own stock, either for itself or for another.

2. APPEAL AND ERROR ⊕⇒843(2)—REVIEW—QUESTIONS PRESENTED.

Where the bonds issued by a bankrupt corporation, which were held valid by the trial court, were in an amount more than sufficient to absorb all of the corporate assets, the question of the validity of the bonds found invalid by the court need not be determined on appeal by the trustee on behalf of the general creditors.

3. BANKRUPTCY ⊕⇒355—CONTRACTS ⊕⇒137(1)—SEVERABLE CONTRACTS—BONDS OF CORPORATION.

Valid parts of severable contracts, which contain both valid and void or voidable parts, may be enforced, if the consideration and agreement are tainted with no fraud or immorality, although the void or voidable parts cannot be; hence, where part of the bonds issued by a corporation that later became bankrupt were valid, and supported by a good consideration, such bonds are enforceable, although other bonds given for the purchase of the corporation's own stock were not entitled to priority over claims of subsequent creditors without notice.

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CORPORATIONS ⊚⟐471—BONDS—VALIDITY.

Under Const. Okl. art. 9, § 39, prohibiting the issue of stock, except for money, labor done, or property to the amount of the par value thereof, where a corporation increases its bonded indebtedness, a part of which is for a full and valuable consideration, and part is without such consideration and fictitious, and the real is readily severable from the fictitious increase, the former is valid, though the latter may be void or voidable.

5. BANKRUPTCY ⊚⟐314(1)—STOCK—CONTRACT.

A claim against the estate of an insolvent newspaper corporation for an amount paid to the corporation by one who, through the issuance of corporate bonds, acquired from other stockholders their stock, *held* not a payment to the corporation itself, but a payment for the stock pursuant to the contract, and so the claim was properly disallowed.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

In the matter of the bankruptcy of the Oklahoma City Times Company. The claim of C. B. Edgar was denied, and the claim of C. B. Ames and others, as bondholders, was allowed, and claimant Edgar appeals, and Norman H. Wright, trustee in bankruptcy, also appeals. Orders affirmed.

J. L. Hull, of Muskogee, Okl., and O. E. Shultz, of St. Joseph, Mo., for appellant Edgar.

Keaton, Wells & Johnston, of Oklahoma City, Okl., for appellant Wright.

Ames, Chambers, Lowe & Richardson, of Oklahoma City, Okl., for appellees.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The Oklahoma City Times Company, in April, 1911, was a corporation of the state of Oklahoma, engaged in publishing newspapers in Oklahoma City. D. T. Flynn, C. B. Ames, and B. P. Johnson, owned all its capital stock, the par value of which was $100,000. Two rival newspapers, the Pointer and the Free Press were being published in competition with the Times. Flynn and his associates made agreements with C. B. Edgar that they would sell and transfer to him their $100,000 of stock, would pay certain debts of the corporation, which amounted to $5,000, would pay $15,000 to the Times Company to enable it to buy the Pointer, that for their stock and these payments they should receive $115,000 of the mortgage bonds of the corporation, that the corporation should buy the Free Press and should issue $20,000 of its mortgage bonds to Gaylord & Stafford, the owners thereof, and that Edgar should pay to the Times Company $10,000 in cash. These agreements were performed. In the performance of them the corporation issued its bonds for $135,000, of which Flynn and his associates received $115,000, and Gaylord and Stafford $20,000. The Times Company secured these bonds by a mortgage on its property dated September 1, 1911. On October 12, 1914, the corporation filed its voluntary petition in bankruptcy, and it was adjudged a bankrupt on October 15, 1914. The property of the bankrupt was worth about and no more than $40,000. Its operation by the bank-

⊚⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ruptcy court incurred a constant loss, and it was soon sold to the holders of the mortgage bonds by order of the court, on condition that they give a bond to pay "all claims, demands, charges, costs, expenses of administration and of the receivership proceedings, that may be adjudged by this court or other court of competent jurisdiction to be prior to the lien of said mortgage or deed of trust or legally payable out of the property of this estate in priority to the lien of said deed of trust." They gave the bond, and the question now is whether certain unsecured creditors of the corporation whose claims accrued after the mortgage was made and recorded are either prior in lien or superior in equitable right to payment out of the mortgaged property to the lien and equitable right of the mortgage bondholders to such payment.

These subsequent creditors, here represented by the appellant, the trustee in bankruptcy, insisted that they were entitled to payment out of the proceeds of the property of the bankrupt, in preference to the bondholders, first, because the consideration of the indebtedness of $135,000 secured by the mortgage was the payment of Edgar's debt to Flynn and his associates, for the transfer of their stock to him; and, second, because a fictitious increase of the indebtedness of the corporation was made by the making of the bonds and mortgage, and was void under article 9, section 39, of the Constitution of Oklahoma. The court below held, first, that $50,000 of the $135,000 mortgage indebtedness, consisting of the $10,000 paid into the treasury of the corporation by Edgar in consideration of the sale and transfer to him of the stock of Flynn and his associates, of the $5,000 of the debts of the corporation Flynn and his associates paid, of the $15,000 they paid and the corporation used to purchase the Pointer, and the $20,000 due on the bonds of the corporation issued to Gaylord and Stafford for the Free Press, was a just and valid indebtedness of the corporation, for which it received a full and valuable consideration, without regard to the transfer of the stock, so that, to that amount and interest thereon, the lien of the mortgage was prior in time and superior in equitable right to payment to the claims of unsecured creditors, and that, as the value of the property of the bankrupt was much less than $50,000, the unsecured creditors were entitled to no payments ·upon their claims under the terms of the bond or in equity. In the second place, the court below held that to the amount of the $50,000, the indebtedness evidenced by the mortgage bonds did not constitute a fictitious increase of the indebtedness of the corporation in violation of article 9, section 39, of the Constitution of Oklahoma, that full consideration was paid therefor, and that the bondholders were entitled to the preference in payment out of the property of the corporation to this amount over the unsecured creditors. The trustees appealed; the bondholders did not.

[1, 2] As the mortgage indebtedness for $50,000 and interest is more than sufficient to absorb the value of all the property of the bankrupt's estate, it is unnecessary to discuss the correctness of the decision below that as to the $85,000, the only consideration for which was the payment by the corporation of the debt of Edgar to Flynn and his

associates for the transfer of their stock in the corporation to him, the claims of the subsequent unsecured creditors, who became such without notice of the consideration, or of the lack of it, for this $85,000 of indebtedness, were superior in equity and entitled to a preference in payment out of the mortgaged property of the corporation over the claims of the bondholders. Suffice it to say that the rule seems to be well established that in the administration and distribution of the property of insolvent corporations in equity the claims of subsequent creditors without notice are superior and entitled to preference in payment over the holders with notice of mortgage bonds of the corporation whose only consideration was the purchase by the mortgagor corporation of its own stock, either for itself or for another. In re Haas Co., 131 Fed. 232, 65 C. C. A. 218; M. V. Moore & Co. v. Gilmore, 216 Fed. 99, 101, 132 C. C. A. 343; Coleman v. Tepel, 230 Fed. 63, 70, 71, 144 C. C. A. 361; Atlanta & Walworth Butter & Cheese Assn. v. Smith et al., 141 Wis. 377, 382, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42; Maryland Trust Co. v National Mechanics' Bank, 102 Md. 608, 63 Atl. 70; Hamor v. Taylor-Rice Engineering Co. (C. C.) 84 Fed. 392; In re Fechheimer Fishel Co., 212 Fed. 357, 360, 362, 129 C. C. A. 33.

[3] But the contentions of counsel for the unsecured creditors now are that the inferiority in equity to their claims of the claims of the bondholders to payment of the $85,000 and interest for which the corporation received no beneficial consideration invalidates their claim for preference in payment of the $50,000 and interest secured by the same mortgage for which the corporation received a full and valuable consideration. But valid parts of a severable contract which contains both valid and void or voidable parts may be enforced, if the consideration and the agreement are tainted with no fraud or immorality, although the void or voidable parts cannot be. United States v. Bradley, 35 U. S. (10 Pet.) 343, 9 L. Ed. 448; In re Johnson (D. C.) 224 Fed. 185, 186; Navigation Co. v. Winsor, 20 Wall. 64, 70, 22 L. Ed. 315; Ill. Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 280, 22 C. C. A. 171, 34 L. R. A. 518. The evidence is convincing that there was no intention to defraud creditors or others in the minds of any of the parties to the transaction which resulted in the mortgage for $135,000. All the existing debts of the corporation were then or soon thereafter paid. All the stockholders of the corporation understood, agreed to, and participated in the performance of the contracts which resulted in the mortgage. The transaction, the bonds, and the mortgage were impervious to attack by every one so long as the corporation should remain solvent, and all parties hoped and believed that it would never become insolvent. Nevertheless, because the indebtedness of the corporation was, without any consideration beneficial to it, increased by the $85,000 in bonds issued to enable Edgar to pay Flynn and his associates for their stock, the mortgage was subject to the possibility that the bonds evidencing this increase might become voidable at some future time as to subsequent creditors without notice, in case the corporation should become insolvent. About three years after the transaction, the unexpected happened; the corporation became insolvent. So it is

that the transaction of 1911, and the bonded indebtedness and the mortgage it produced, were free from all taint of fraud or evil intent, and the case falls well within the rule above stated.

The opinions in Jaffray & Co. v. Wolf et al., 4 Okl. 303, 47 Pac. 496, and Clarke v. Lincoln Lumber Co., 59 Wis. 655, 18 N. W. 492, cited by counsel for the trustee, have been read; but the transaction described in the former was tainted with malum in se and that in the latter with malum prohibitum. There was, therefore, no error in the conclusion of the court below that the claim of the bondholders to the payment of the $50,000 and interest was superior in equity to the claims of the unsecured creditors.

[4] Their counsel argued, however, that, notwithstanding the full consideration received by the corporation for this $50,000 of the mortgage debt, the entire debt of $135,000 was void, because its making constituted a fictitious increase of the indebtedness of the corporation in violation of article 9, section 39, of the Constitution of Oklahoma. The portion of that section pertinent to this contention reads in this way:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness."

In support of their position here, counsel cite Webster v. Webster Refining Co., 36 Okl. 168, 128 Pac. 261, 47 L. R. A. (N. S.) 697 and the opinion in that case has received consideration. But it treats only of the issue of stock for property of less value than the par value of the stock, and does not interpret the clause, relevant to the case in hand, that "all fictitious increase of * * * indebtedness shall be void." It will be noticed that, while this section 39 prohibits the issue of stock, except for money, labor done, or property to the amount of the par value thereof, it does not prohibit the issue of bonds, except for such considerations, as many state Constitutions and statutes do. Conceding, without admitting or deciding, that $85,000 of the $135,000 mortgage indebtedness of the corporation was without consideration and constituted a fictitious increase of its indebtedness, nevertheless $50,000 of that $135,000 indebtedness, so far as it constituted any increase of the indebtedness of the corporation, was a real and not a fictitious increase, and as the mortgage indebtedness was evidenced by bonds of denominations of $1,000 each, the real increase of indebtedness was readily severable from the fictitious increase thereof. For example, Gaylord and Stafford, the owners of the Free Press, after considerable negotiation, sold it to the corporation for 20 of the $1,000 mortgage bonds. The legal presumption is that the Free Press was worth $20,000 to the Times Company, there is no evidence to the contrary, the 20 bonds paid for the Free Press are readily distinguishable and severable from the remainder of the $135,000 mortgage indebtedness, and their making and delivery certainly created, not a fictitious, but a real, bona fide and valid increase of the indebtedness of the corpora-

tion, for which it received full value. This is likewise true of all the other items of indebtedness constituting the $50,000. The Constitution does not prohibit a real increase for full consideration of the indebtedness of the corporation, but a fictitious increase only, and as the increase to the extent of $50,000 of the $135,000 indebtedness was real, and not fictitious, that increase cannot, in reason, law, or equity, be held to fall under the ban of the Constitution of Oklahoma.

The unavoidable result is that, where a corporation creates an increase of indebtedness, a part of which is for a full and valuable consideration and is a real increase, and a part of which is without such consideration and is a fictitious increase, and the real increase is readily severable from the fictitious increase, the former is valid, although the latter may be void or voidable under article 9, section 39, of the Constitution of Oklahoma, and the mortgage indebtedness of the Times Company to the extent of $50,000 was valid, notwithstanding that section.

This conclusion is consistent with the treatment by the federal courts of somewhat similar questions in Memphis, etc., Railroad v. Dow, 120 U. S. 299, 7 Sup. Ct. 482, 30 L. Ed. 595; Clark v. Johnson, 245 Fed. 442, 447, 157 C. C. A. 604; Granite Brick Co. v. Titus, 226 Fed. 557, 567, 570, 141 C. C. A. 313.

[5] In a claim against the estate of the bankrupt which Mr. C. B. Edgar filed he insisted that the Times Company was indebted to him for the $10,000 which he paid to it in the performance of the contracts between him and D. P. Flynn & Co., recited at the opening of this opinion. The court below held that under these contracts this $10,000 was a part of the consideration which he paid for the stock of Flynn and his associates that he bought, and that the corporation was therefore not indebted to him therefor, and it refused to allow his claim for it. From the order which disallowed this claim, Mr. Edgar appealed; but a careful consideration of the contracts, the testimony of the witnesses, and the briefs of counsel have left no doubt that the opinion and order of the court upon this subject were right.

Let the order of the court below of December 11, 1916, which disallowed that part of the claim of C. B. Edgar which related to the $10,-000 he paid to the Times Company, be affirmed, with costs against him; and let the order of the court below of December 11, 1916, whereby the holders of the mortgage bonds of the Oklahoma City Times Company were adjudged to be entitled to a superior right and an equitable preference in the payment of their bonds and interest over the unsecured creditors, be affirmed also, with costs against Norman H. Wright, the trustee in bankruptcy and appellant.