## LEE et al. v. CAMERON et al.

No. 7876—Opinion Filed Nov. 27, 1917.

(169 Pac. 17.)

(Syllabus.)

### 1. Corporations—"Watered Stock."

Watered stock, or fictitiously paid-up stock, is stock which is issued as fully paid-up stock, when in fact the whole amount of the par value thereof has not been paid into the treasury of the company. All stock which has been issued as paid-up stock, but the full par value of which has not been paid into the corporation in money or money's worth, is watered to the extent that the par value exceeds the value actually paid into the treasury. Watered stock is, accordingly, stock which purports to represent, but does not represent, in good faith, money paid into the treasury of the company, or money's worth actually contributed to the capital of the concern.

### 2. Same—Constitutional Provisions.

Section 39, art. 9, of the Constitution of Oklahoma, providing that "no corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, * * *" prohibits the issuance by corporations of watered or fictitiously paid-up stock, and a sale of the shares of stock by a corporation for money, labor done, or property actually received of a less value than the par value of said stock is in violation of said constitutional provision, and the stock so issued is void.

### 3. Same—Capital Stock—Validity.

Stock certificates are void in the hands of all holders if they were issued by the corporation in violation of section 39, art. 9, of the Constitution, for a consideration less than the par value thereof.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Suit in equity by Frank E. Lee against C. H. Cameron and the Paden Oil Company, in which A. D. Morton intervened and adopted the allegations of the plaintiff's petition and asked for the same relief. Decree in favor of defendant Cameron, and plaintiff and the intervener bring error, and defendant Cameron files a cross-petition in error. Reversed, with directions, and temporary injunction continued in force pending further proceedings.

Rowland & Talbot and Ames, Chambers, Lowe & Richardson, for plaintiffs in error.

J. T. Dickerson and Riddle & Hammerly, for defendants in error.

RAINEY, J. This is a suit in equity instituted by Frank E. Lee, a stockholder of the Paden Oil Company, against the Paden Oil Company and C. H. Cameron, to cancel 260 shares of stock of said corporation issued by it to C. H. Cameron, who was a stockholder, director, and president of said corporation. It was alleged that the par value of the stock so issued to Cameron was $25 per share, or of the total value of $6,500; that the purported consideration for the issuance of said 260 shares of stock was $2,600, or 40 per cent. of its par value, but that in fact said stock was issued without

any consideration whatever, and in fraud of the corporation. One A. D. Morton, a large stockholder in the corporation, intervened in the action, and adopted the allegations in the plaintiff's petition, and asked for the same relief. The intervener further alleged that he purchased from C. H. Cameron 40 shares of the capital stock of the company, and that at the time of the purchase of said stock he was aware that C. H. Cameron was one of the incorporators of said company and was a holder of a large amount of stock in said company, but he was not aware of the fact that said stock was a portion of any unlawful and unwarranted issue of stock made by said C. H. Cameron to himself, but that he had since been informed and believed that said 40 shares of stock were unlawfully issued. He further alleged that C. H. Cameron warranted that said 40 shares of stock were regularly and legally issued, for a valuable consideration, and that he (Cameron) was the owner of same, and had good right to convey the stock to him. His petition for intervention contained these further allegations:

"Intervener says that in the event the court shall, upon final determination of this cause, decree as void the issuance of the company of the 260 shares of stock in favor of C. H. Cameron, which are involved in this action, then the intervener will be under the necessity of bringing an action against the defendant C. H. Cameron for breach of warranty in the sale of said stock, or against the defendant the Paden Oil Company for the purpose of enforcing his rights in said 40 shares of stock, unless the intervener is given a remedy in this action; that by reason of the facts above alleged, the intervener will be subject to irreparable damages, unless the court protects his rights in this action; that in the event the issue of the 260 shares of stock brought in question in this action shall be invalidated, the court should at the same time provide in its decree that as to the 40 shares of said issue purchased by the intervener from the plaintiff, the defendant C. H. Cameron should be required to surrender for cancellation 40 shares, which have been lawfully and regularly issued to him, and thus offset the 40 shares of stock purchased by this intervener, and which are thus brought in question."

The defendants filed an answer admitting that the stock in controversy was issued for 40 per cent. of its par value, but also alleged that it was issued in good faith for an indebtedness due C. H. Cameron by the corporation, and that at the time it was issued it was not worth as much as 40 per cent. of its par value. The defendant Cameron subsequently filed a separate answer, wherein he alleged that the issue of stock was legal, and that it was issued for an indebtedness actually owing by the company to him for money loaned to and expenses incurred on behalf of said company, through its directors, and that he, in good faith, purchased the same and surrendered and canceled the indebtedness due him by said company in consideration thereof. He further alleged that he had performed valuable services for the defendant company, which were reasonably worth $250 per month, or a total of $7,500, that said amount had never been paid him, and that it was his intention, and was also the intention of the board of directors of the company, that in addition to the $2,600 money advanced by him, and which said amount the company was due him at the time of the issuance and delivery to him of the 260 shares of stock, that he (Cameron) would cancel and surrender the amount due him for services rendered the company. He asked that the relief prayed for by the plaintiff be denied, that the plaintiff petition be dismissed, and that he be declared to be the legal and equitable owner of the said 260 shares of stock.

The Paden Oil Company was organized by the defendant C. H. Cameron, A. G. Rogers, and B. L. Carney, who were the sole and only stockholders on the date of the organization, and who composed the board of directors. The authorized capital of the corporation was $25,000, divided into 1,000 shares of the par value of $25 each. At the time of the organization, Cameron, Rogers, and Carney were the owners of some oil and gas leases near Paden, Okla., valued at $12,500, which were assigned by them to the company for 500 shares of stock of the par value of $12,500. From that time on Mr. Cameron seems to have devoted his entire time to promoting the interests of the company. His efforts to sell the stock of the company met with indifferent success, and he also had considerable difficulty in having the leases belonging to the company prospected for oil and gas, but as a culmination of his efforts he succeeded in making a contract with the Prairie Oil & Gas Company to drill a test well in consideration of the assignment to it of a one-half interest in the leases. After considerable delay the well was drilled and an oil sand was found on November 10, 1914, and the well was sealed. Prior to the bringing in of the well the stock of the company was not only not in demand, but practically none of it could be sold for par, and much of it was sold

for less than par. After the well was brought in the stock readily sold on the market, some for four times the par value thereof. The 260 shares were issued to Cameron for $2,600 prior to the bringing in of the well, at which time the price paid was as much or more than any one else would pay for the stock.

After a hearing, the trial court granted a temporary injunction enjoining the defendant Cameron from disposing of the 260 shares of stock in controversy, or from voting the same at any annual meeting of the company. On final hearing the trial court made elaborate findings of fact and conclusions of law, which findings minutely set out the circumstances under which the company became indebted to Cameron, the allowance of his claim and the issuance of the stock to him. We do not consider it necessary to a determination of the issues involved on appeal to consider all the findings. In effect the court found that the 260 shares of stock were issued to Cameron in good faith for $2,000, or 40 per cent. of the par value thereof, and the court concluded as a matter of law that:

"The issuance of the 260 shares of stock to the defendant Cameron operated to vest in him the legal title to said shares of stock evidenced by such certificates, but in addition to the consideration given therefor, the defendant Cameron should account to the defendant company for the unpaid $15 a share for each share of stock represented by said certificate—a total sum of $3,900, for the payment of which the company is entitled to a lien on such stock, which amount, however, may properly be reduced by a partial offset of the $1,677.64, the amount due Cameron from the defendant company, upon notes outstanding in his favor on December 5, 1914."

The court also further found that the intervener Morton "purchased 40 shares of the issue of 260 shares in the latter part of December, 1914, and immediately after the negotiations for said stock were concluded, he learned the circumstances under which the said stock had been issued to the defendant Cameron. The intervener has not surrendered said 40 shares for cancellation, nor offered to surrender the same, but is still claiming title thereto," and concluded as a matter of law:

"That in the event the defendant Cameron should fail to pay the amount due the company on the 40 shares of stock purchased from him by the intervener, or make other satisfactory adjustment with him, the latter would be entitled to an exchange of such certificates of stock, for certificates for an equal number of shares of the original stock now held by the defendant Cameron."

From the evidence the trial court also found that since it was the understanding of all concerned that Cameron, as general manager, should not be entitled to other compensation for his services than his actual expenses until otherwise ordered by the board, he was not entitled to be compensated therefor, and denied his claim for salary. The plaintiff Lee and the intervener Morton appealed from the judgment of the trial court to this court, and the defendant Cameron filed his cross-petition in error.

This being an equity action, we have read all the evidence in the record, and have carefully weighed the same, and are of the opinion that the findings of fact are in accord with the weight of the evidence, so we will only consider the questions of law involved in the appeal.

The first question presented is: Was the issue of the 260 shares of stock by the defendant corporation to Cameron for 40 per cent. of the par value thereof void? If so, the court was not authorized to make a new contract for the parties, and the plaintiff, as a stockholder, would be entitled to have the stock canceled; the corporation having refused to institute the action. A correct determination of this question calls for a construction of section 39, art. 9, of our Constitution, which is as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void. * * *"

This provision of our Constitution was intended by its framers and the people who adopted it to prevent the issuance by corporations of "watered or fictitiously paid-up stock." Since the primary object of interpretation is to ascertain the legislative intent, in a consideration of the provision under discussion we should keep clearly in mind the evil attempted to be prohibited. Cook, in his excellent work on Corporations, vol. 1, c. 3, p. 124, defines watered stock as it is generally understood in the following language:

"Watered stock or fictitiously paid-up stock is stock which is issued as fully paid-up stock, when in fact the whole amount of the par value thereof has not been paid in. All stock which has been issued as paid-up stock, but the full par value of which has not been paid into the corporation in money, or money's worth, is watered to the extent that the par value exceeds the value actually

paid in. Watered stock is, accordingly, stock which purports to represent, but does not represent, in good faith, money paid into the treasury of the company or money's worth actually contributed to the capital of the concern."

The Supreme Court of the United States, in Handley v. Stutz, 139 U. S. 417-428, 11 Sup. Ct. 530, 534 (35 L. Ed. 227), makes the following pertinent observations:

"The stock of a corporation is supposed to stand in the place of actual property of substantial value, and as being a convenient method of representing the interest of each stockholder in such property, and to the extent to which it fails to represent such value it is either a deception and fraud upon the public, or an evidence that the original value of the corporate property has become depreciated. * * * If it be once admitted that a corporation may issue stock without receiving a consideration therefor, and where it does not represent actual or substituted value in corporate assets, there is apparently no limit to the extent to which the original stock may be 'watered,' except the caprice of the stockholders."

Under the common law, watered stock was legally issued with great ease, and since it was generally believed that watered stock was a great evil, in that it deceived people and induced them to buy the stock of corporations or to extend credit to them on the supposition that the corporation had received in exchange for the stock issued by it money or property of the par value of the stock so issued, it led to the enactment of constitutional and statutory provisions prohibiting over-capitalization and the watering of stock. We find constitutional provisions in Pennsylvania, Illinois, California, Nebraska, Kentucky, Alabama, Arkansas, Missouri, Texas, Louisiana, Colorado, South Dakota, and some other states, and statutory provisions in Ohio, New York, Wisconsin, Maine, Utah, Indiana, Minnesota, New Jersey, Tennessee, Washington, Oregon, Massachusetts, and Iowa. The provisions are not always the same, and there is an important difference in the provision in our Constitution. In most of the above-named states, the constitutional or statutory provision is substantially as follows:

"No corporation shall issue stock or bonds, except for labor done, or money or property actually received, and all fictitious increase of stock shall be void."

In the states having this provision, or the same in effect, stock issued in violation thereof is uniformly held to be null and void. Jefferson v. Hewitt, 103 Cal. 624, 37

Pac. 638; Kellerman v. Maier, 116 Cal. 416, 48 Pac. 377; Arkansas River, etc., Co. v. Farmers' Loan, etc., Co., 13 Colo. 587, 22 Pac. 954; Lake St. El. R. Co. v. Ziegler et al., 99 Fed. 114, 39 C. C. A. 431; First Ave. Land Co. v. Parker, 111 Wis. 1, 86 N. W. 604, 87 Am. St. Rep. 841. These decisions are based on the proposition that the enactments, as stated in Clarke v. Lincoln Lumber Co., 59 Wis. 655, 18 N. W. 492, are "a declaration of public policy," and it is well settled that any act done in express violation of the public policy of the state is void. On this proposition practically all the authorities agree, but the difficulty presented and the divergence in the authorities arises in the application of the statutory prohibition to the facts of the particular case under consideration. Where the provision itself does not require payment for the stock at its par value, as is required by our Constitution, a transaction wherein stock is disposed of by the corporation for less than par value is not prohibited, but in such cases the transaction must be a real and honest one, made in good faith and not merely an attempt to evade the law. Stein v. Howard, 65 Cal. 616, 4 Pac. 662; Mathis v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015; Brown v. Duluth, etc., Ry. Co. (C. C.) 53 Fed. 889; Continental Trust Co. v. Toledo, etc., Ry. Co. (C. C.) 82 Fed. 642; Memphis, etc., Ry. Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595. But where the stock is issued without consideration in either money paid, labor done, or property actually received, or where the transaction is plainly a mere attempt to evade the law, the issue of stock is void. New Castle, etc., Ry. Co. v. Simpson (C. C.) 21 Fed. 533.

It necessarily follows that stock issued in violation of section 39, art. 9, of our Constitution, is void. In determining whether or not the 260 shares of stock issued by the Paden Oil Company to Cameron in the instant case of the par value of $25 per share for $10 per share is void, the only remaining question presented is: Does such an issue of stock fall within the prohibition of our constitutional provision? It does; for while most of the states forbid the issuance of stock by corporations, except for labor done, or money or property actually received, section 39, art. 9, of our Constitution provides that the money paid, labor done, or property actually received must be "to the amount of the par value thereof."

We think the cases of Altenberg v Grant et al., 85 Fed. 345, 29 C. C. A. 185,

Webster v. Webster Refining Co. of Okmulgee, 36 Okla. 168, 128 Pac. 261, 47 L. R. A. (N. S.) 697, and Clarke v. Lincoln Lumber Co., 59 Wis. 655, 18 N. W. 492, are decisive of the case at bar. The first-named case arose under the Kentucky Constitution, which was construed in an opinion by Judge Taft, then United States Circuit Judge. Justice Lurton, then Circuit Judge, and later one of the Justices of the United States Supreme Court, concurred in the opinion. While this case was quoted from with approval in the Webster Case, supra, the language is so appropriate to the question under consideration we have taken the liberty to again refer to the views of the court so well expressed therein by Judge Taft. The court said:

"Section 193 of the Constitution of Kentucky provides that 'no corporation shall issue stock or bonds except for an equivalent in money paid, or labor done, or property actually received and applied to the purposes for which such corporation was created, and neither labor nor property shall be received in payment of stock or bonds at a greater value than the market price at the time the said labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void.' The learned judge at the circuit held that the contract in this case was for an illegal purpose, because an execution of it would be in violation of this section. We concur in this view. The obvious meaning of the section is that stock and bonds shall only be issued in exchange for work or property when the market price of the labor or property shall be equal to the par value of the bonds or stock exchanged. It has been contended that the market price referred to in the section is the market price of the stock to be issued, and that, if it appears that the work done or property delivered is equal to this market price, the purpose of the section is fulfilled. This would be to render the section nugatory, and would justify a corporation in issuing stock for nothing, if it appeared to have no value in the market. It would thus defeat the plain intent of the section, which was to make the stock and bonds of a corporation worth their face value. The great abuses which have been perpetrated, and the deceits which have been practiced upon the public, in the organization of corporations by the issue of stocks and bonds, the par value of which has been grossly in excess of the real capital embarked in their business, are too well known to require comment. The framers of this section, and the people who adopted it, proposed to remedy these abuses by a specific requirement that no one should acquire stock or bonds from the corporation without having contributed to the capital, available for carrying on its business, cash,

or its full equivalent in labor or property, equal to the part of the stock or bonds received. It is the duty of the court to construe and enforce the section so as to remedy, as far as possible, the evil at which it was directed."

In the Webster Case, supra, this court, in construing this provision of our Constitution, said:

"The evil which this constitutional provision was designed to stop was the so-called practice of watering stock of a corporation; and it is both our duty and our disposition to give this statute its natural construction—the meaning which its words plainly disclose. The corporation is prohibited from issuing stock except for money, for labor done, or for property actually received to the amount of the par value thereof. These words have a very plain significance. They mean just what they say."

And again:

"The Constitution provides that the corporation shall not issue its stock, except for a consideration equal to the par value thereof. This represents the public policy of the state. It is intended to bind the corporation. It is intended to protect the public. It is intended to put corporations upon a real substantial basis, to prevent the watering of their stock."

It is urged, however, that the opinion in the Webster Case, supra, is not in point, for the reason that the facts in that case are very different from the facts in the case at bar, and that the identical question for determination here was not involved in that case. It is further urged that in the Webster Case, a large per cent. of the stock agreed to be issued by the corporation to Webster was without any valid consideration, and that, even under the common law, an overissue of stock without any valid consideration whatever was fictitious and void. We have carefully examined that case, and are of the opinion that the provision was there correctly construed, and we fully agree with the views therein expressed. While no doubt the transaction in the Webster Case was illegal, even under the common law, it was also in violation of section 39, art. 9, of our Constitution. Section 6, art. 12, of the Texas Constitution, did not include the words, "to the amount of the par value thereof," but is otherwise identical with our provision, and on account of the difference in the language of the constitutional provisions the case of Mathis et al. v. Pridham, 1 Tex. Civ. App. 58, 20 S. W. 1015, cited by the defendant in error, is not in point. Neither is the case of Memphis & Little Rock Ry. Co. v. Dow, 120 U. S. 287, 7 Sup.

Ct. 482, 30 L. Ed. 595, persuasive in this case, for the same reason. The last-named case involved the construction of a provision of the Arkansas Constitution, and in commenting on that case this court, in the Webster Case, supra, speaking through the learned commissioner, in calling attention to the difference in the provisions, said:

"It will be observed, however, that our Constitution goes a step further than that section of the Arkansas Constitution which was construed in that case. There it was held that, as the stock was issued for property actually received, and as the transaction was in good faith, it will be sustained. Our Constitution, however, inserts the words, 'to the amount of the par value thereof,' which are not found in the Arkansas Constitution, and which were inserted to prevent doubt upon the proposition."

Section 39, art. 9, of our Constitution, is similar to section 193 of the Constitution of Kentucky, and section 1753 of the Wisconsin Statutes.

In discussing the provisions of the Arkansas Constitution, in the case of Railway Co. v. Dow, supra, the Supreme Court of the United States, speaking through Mr. Justice Harlan, stated that the purpose of such statutes was to protect stockholders against spoliation, and to guard the public against securities that were absolutely worthless, and that one of the mischiefs sought to be remedied was the flooding of the market with stock and bonds that did not represent anything whatever of substantial value. And as this was the purpose of the enactments in those states where the law did not require the consideration for the issuance of the shares to be for money, labor done, or property actually received equal to the par value thereof, we think it is equally obvious that where the important addition was made by the framers of our Constitution requiring the money paid, labor done, or property actually received to equal the amount of the par value of the stock, that not only should the stock, when issued, represent some substantial value, but that it must actually represent the value represented by the certificates—that is, par value. And as stock issued in violation of the constitutional and statutory provisions of other states is void, so stock issued in this state for money, labor done, or property actually received, having a value less than the par value of the stock so issued, is in violation of our constitutional provision, and is therefore void. The party to whom it is issued does not obtain any title whatever thereto.

The public in this state are vitally interested in the manner in which corporations are organized and conduct their business, and the corporations being creatures of the law, the people who give them the authority to exist have the right to declare the public policy of the state, and to insist that such corporations shall not transcend the powers conferred upon them by law. The wording of our Constitution is plain and unambiguous, and any attempted sale of the stock of a corporation organized under the laws of this state since the adoption of our Constitution, except for money, labor done, or property actually received, to the amount of the par value thereof, is fictitious and therefore void. Corporations are not entitled to and should not receive credit on the false pretense of having a large paid-up capital, when in fact only a small percentage of the par value of the stock issued has ever been paid into the treasury of the company. A strict compliance with the provision will subserve the public morals and will, in a large measure, protect those buying stock from and otherwise dealing with corporations.

While the purported issue of the 260 shares of stock to Cameron for less than its par value was void, we must next determine the status of the 40 shares of such issue attempted to be sold by Cameron to Morton. Assuming, without deciding, that Mr. Morton was not aware of the invalidity of the stock at the time of his purchase from Cameron, we are of the opinion that since the invalidity of such stock is statutory it is void in the hands of all holders. The status of such stock is similar to that of an overissue, which has frequently and generally been held void in the hands of bona fide purchasers for value. This is based on the ground that as an overissue of stock is entirely beyond the power of a corporation, such overissue cannot be validated by any estoppel operating against the corporation. The same rule is also applied to stock in the hands of one who purchased it in good faith and for a valuable consideration from the party to whom it was illegally issued by the corporation, for the reason that such stock cannot legally exist, and the person taking it cannot, by estoppel or otherwise, become a stockholder in the corporation that permitted the stock to be issued. American Tube Works v. Boston Machine Co., 139 Mass. 5, 29 N. E. 63; Ross-Meehan Shoe Foundry Co. v. Southern Malleable Iron Co. (C. C.) 72 Fed. 957. While such a purchaser of void stock may not be without a remedy, that question is not presented for determination by the record in the instant

case, for an examination of the pleadings discloses that Mr. Morton did not ask for any relief as against the Paden Oil Company, but on the contrary he joined in the prayer to have the 260 shares of stock issued to Cameron canceled. His 40 shares are a part of this issue. In his petition for intervention it will be noted that he asked for relief against Cameron, but when the case was called for trial that portion of the petition was stricken on motion of counsel for Cameron, and without objection from opposing counsel.

From the views herein expressed, it follows·that the trial court erred in decreeing that Mr. Cameron was legally entitled to retain the 260 shares of stock issued to him. Since said stock was void, the trial court was not authorized to make a new contract for the parties and to permit Mr. Cameron to retain the same upon the payment of an additional consideration sufficient to make the total consideration equal to the par value thereof. The court also erred in permitting the intervener Morton to retain the 40 shares out of the 260 shares so illegally issued.

This cause is therefore reversed, with directions to the trial court to take such further proceedings in the case as are not inconsistent with the views herein expressed. The temporary injunction heretofore granted is continued in force pending further proceedings in the trial court.

All the Justices concur.