**COLLIER, Adm'r, v. EDWARDS et al.**

No 18819. Opinion Filed April 1, 1930.

Rehearing Denied June 24, 1930.

Commissioners' Opinion, Division No. 1.

Stuart, Cruce & Franklin, Walker & Walker, and Suits & Disney, for plaintiff in error.

Keaton, Wells, Johnston & Barnes and Burford, Miley, Hoffman & Burford, for defendants in error.

FOSTER, C. The parties appear in this

case as they did in the trial court. The plaintiff, Henry Collier, a resident of Arkansas, invented a safety alarm device and secured a patent therefor, which patent covered all of the United States and its territories. John Guyer, who lived at Bethany, Okla., and was employed by the Western Union, knew something about electrical machinery and became interested in the device. Guyer also interested one R. A. Rogers and a Dr. Salmon, of Oklahoma City, and these three parties made a contract with Collier in which they agreed to buy his patent for the sum of $50,000. Prior to the entering into this contract, some of the rights in the patent had been purchased from Collier by some parties living in Wichita, Kan., and, pursuant to the terms of the contract, these rights were to be assumed by Guyer, Rogers, and Salmon. The contract provided that a corporation should be organized and the assistance of certain other men, including the defendant Edwards, was to be obtained, and the corporation was to be organized as soon as possible, and 50 per cent. of the sale of the stock should apply upon the debt due the plaintiff, Collier.

Pursuant to this contract and arrangement, two corporations were organized, the first known as the Collier Safety Alarm Company, which was for $200,000, and the second for $1,000,000, known as the Safety First Alarm Company. While Edwards did not sign the incorporation papers, he is listed in the articles of incorporation as an incorporator. The object and purpose of organizing the company seems to have been fully understood by all the parties. There is some proof that the whole issue of stock, consisting of $1,000,000, should first be issued to Salmon, Rogers and Guyer, and then reissued to Edwards and the other defendants; but the stock was actually issued direct to Edwards and the other defendants, and for the purposes of this suit it may be admitted that it was understood that the stock issued to Edwards and the other defendants was to be issued without being paid for in full, or without being paid for at all.

Edwards received stock in the Safety First Alarm Company of the par value of $90,000, and the other defendants received certain stock, the amount of which is immaterial in this appeal. At the same time stock at par value to the amount of $67,000 was issued in the name of Collier to be held by him as security. The company proved a failure. Some of the stock which was not issued to the defendants, nor to Rogers, Salmon, and

Guyer, was sold, but it is admitted that Collier never received any of the proceeds. The reason for the failure of the corporation does not fully appear. It was caused either by their inability to get material owing to the World War, or because there was another patent of which they had no knowledge; but, for the purposes of this case, we think this immaterial.

Collier, not having received his money, brought suit in the federal court against Salmon, Guyer, and Rogers and the Safety First Alarm Company, and at the trial he dismissed the same with prejudice as to Rogers, Salmon, and Guyer, and secured a judgment against the Safety First Alarm Company in the sum of $62,000. Execution was issued thereon and returned "No property found." He thereupon brought this suit in the district court of Oklahoma county to recover the sum of $62,000 against R. J. Edwards and others, on the theory that they held stock in the Safety First Alarm Company, which was not paid for. The trial court sustained a demurrer to Collier's petition, and he appealed to this court, and the action of the trial court was reversed, the same being Collier v. Edwards, 109 Okla. 153, 234 Pac. 720.

After reversal of the cause, the defendants filed their answer, and at a trial in the district court a judgment in favor of R. J. Edwards, denying to Collier any relief whatsoever, was granted, and from this judgment Collier appeals. The other defendants were disposed of in the trial court, some upon voluntary dismissal and others by action of the court. This appeal only involves the liability of Edwards. It appears, however, that the amount of stock held by Edwards at the time of the trial, which was not paid for, equalled the amount of the judgment sought against him.

During the pendency of this action, Henry Collier died, and the cause has been revived in the name of his administrator, M. M. Collier.

The three propositions relied upon for a reversal of this case are as follows:

First. The effect of section 5345, C. O. S. 1921, assuming that the creditor had knowledge as to the nonpayment for the stock issued to the defendant in error, R. J. Edwards.

Second. If the knowledge on the part of the creditor is a material factor, then applying section 5345, supra, does the evidence in this case disclose such knowledge as to pre-

clude plaintiff in error from asserting his rights under section 5345?

Third. Is the statute of limitations, which defendant in error, R. J. Edwards, pleaded, available to him under the circumstances in this case?

The chief question presented by this appeal is whether or not a person who has contracted with a corporation, with full knowledge of the manner in which its shares have been issued, can recover, under section 5345, C. O. S. 1921, from the holder of a certificate of stock which has not been paid for in full, there being no agreement between the corporation and the holder that said certificate should be paid for.

Section 5345, supra, is as follows:

"Each stockholder of a corporation is individually and personally liable for the debts of the corporation to the extent of the amount that is unpaid upon the stock held by him. Any creditor of the corporation may institute joint or several actions against any of its stockholders that have not wholly paid the capital stock held by him, and in such action the court must ascertain the amount that is unpaid upon the stock held by each stockholder and for which he is liable, and several judgment must be rendered against each in conformity therewith. The liability of each stockholder is determined by the amount unpaid upon the stock or shares owned by him at the time such action is commenced, and such liability is not released by any subsequent transfer of stock. And in no other case shall the stockholders be individually and personally liable for the debts of the corporation. The term 'stockholder,' as used in this section, shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appear on the books in the name of another; and also to every person who has advanced the installments or purchase money of stock in the name of a minor, so long as the latter remains a minor; and also to every guardian or other trustee who voluntarily invests any trust funds in the stock. Trust funds in the hands of a guardian or trustee shall not be liable under the provisions of this section by reason of any such investment, nor shall the person for whose benefit the investment is made be responsible in respect to the stock until he becomes competent and able to control the same; but the responsibility of the guardian or trustee making the investment shall continue until that period. Stock held as collateral security, or by a trustee, or in any other representative capacity, does not make the holder thereof a stockholder within the meaning of this section, except in the cases above mentioned, so as to charge him with the debts or liabilities of the corporation; but the pledgor or person or estate represented, is to be deemed the stockholder as respects such liability."

The exact question here presented has never before been decided by this court. It has been very thoroughly briefed and very ably argued by counsel on both sides. Numerous decisions covering a long period of time have been cited, and extended arguments construing those decisions have been presented. We have carefully considered all of the cases presented by counsel, and have come to the conclusion that under the law in this state a creditor, who has contracted a debt with a corporation, with full knowledge that the shares of stock issued were not paid for in full, as provided by section 39, article 9, of the Constitution, cannot recover under section 5345, supra, from the holder of such certificate of stock, although the same has not been paid in full or only partially paid for. In this conclusion we think we are supported by the previous decision of our own court.

Section 5345, supra, has been discussed and considered by many decisions of this court, although the point here involved has never been decided. Section 39, article 9, of the Constitution provides that no corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void.

In the case of Lee v. Cameron, 67 Okla. 80, 169 Pac. 17, this court held, that, under the above provisions of the Constitution, any issue of stock by a corporation, which was not fully paid for either in money, labor done, or property received, was absolutely void, even in the hands of an innocent purchaser for value and without notice, in effect, holding that as between the corporation and the stockholder, no liability whatsoever existed; that the stockholder had no rights commonly held by such stockholder, and that the corporation had no right of action against or control over said stockholder. Such stock is by this opinion declared to be in the same position as stock issued over and above the capital stock of a corporation, at least so far as the corporation and stockholder are concerned. In other words, as between the corporation and the holder of such certificates of stock, the holder is as a matter of fact not a stockholder at all.

In the case of Collier v. Edwards, supra, which was the first appeal in the instant case, this court, while recognizing the opin-

ion in Lee v. Cameron, held, in effect, that, so far as the creditor is concerned, the stockholder, holding shares of certificates of stock issued in violation of the constitutional provision, was estopped from denying that he was a stockholder and became liable to such creditor. In that case the trial court apparently took the view that, since Lee v. Cameron, supra, had decided that the issue of such stock was void, therefore, under section 5345, supra, the holder of such certificates was not a stockholder; and as the provisions of that statute say that "each stockholder of a corporation is individually and personally liable for the debts," etc., that such a holder was not included within the terms of the statute, he being in fact not a stockholder. However, this court took a different view, and we think correctly, and held that he would be estopped upon the grounds of fraud. The last syllabus in the case of Collier v. Edwards, supra, is as follows:

"The right of creditors to compel payment of the balance due for stock issued as fully paid, when it is only partially so, or when nothing at all has been paid thereon, is based upon the fact that such issuance is a fraud as to them."

From a careful reading of this case, we come to the conclusion that our court has based the liability of stockholders to creditors, in a case such as is presented here, upon the fact that such issuance is in fraud of them. If it is a fraud upon the creditor, and we think Collier v. Edwards, supra, so specifically holds, then the creditor cannot collect unless he has been defrauded. We know of no case that is based upon fraud which permits a creditor to collect unless he has changed his position to his injury by reason of the fraud. Certainly, under the facts here presented, the creditor did not change his position to his injury, if he knew at the time he contracted his debt that the stock held by Edwards was issued without being paid for in full, or without any payment whatsoever.

Plaintiff first assumes that the theory of the creditor is based upon fraud, but contends that it is a fraud which is created by statute. His argument proceeds upon the proposition that, although the plaintiff may have known of all the facts and circumstances and knew that the stock was issued without being paid for, and with this knowledge contracted his debt, the statute creates such a fraud that he cannot waive it. But with this contention, if this be plaintiff's position, we cannot agree.

While not admitting that his position in this case is against the holding in the case of Collier v. Edwards, supra, which was the first appeal, plaintiff next contends that if it is in conflict this court should not follow the same, and cites cases to the effect that the law of the case does not necessarily govern in a second appeal. This court, perhaps, has a right upon second appeal to reconsider its former opinion and to refuse to follow the same, if it is erroneous, particularly when rendered in the same case and between the same parties. M., K. & T. Ry. Co. v. Lenahan, 85 Okla. 290, 206 Pac. 233; Wade v. Hope, 89 Okla. 64, 213 Pac. 549. However, we believe the opinion on the first appeal in this case was correct.

We have found no case in other jurisdictions where an identical state of facts is presented, but we do find that questions of a similar nature, and concerning statutory and constitutional provisions, not unlike in principle the provisions of our statutes and Constitution, have been passed on by many jurisdictions in scores of cases over a period of many years. We are frank to state that we are unable to harmonize all of the different opinions relied upon. Many statements are made in the opinions which support the contention of the plaintiff, even under statutes and constitutional provisions similar to ours; but we think that, as a general rule, the American authorities support the conclusions which we have here reached.

In 7 A. L. R., p. 972, the general rule is laid down as follows:

"In most jurisdictions it is held that where a creditor knows at the time he extends credit that shares of the capital stock of a corporation have not in fact been paid in full, he will be estopped from enforcing the stockholder's liability for the difference between the amount paid, or value delivered, and the par value of the stock."

This general proposition is supported, we think, by the following texts: 1 Cook on Corporations, p. 39; 5 Fletcher on Corporations, p. 3589; 6 Fletcher on Corporations, sec. 4153.

7 A. L. R. 983, has this to say:

"In the construction of the statutes defining the liability of stockholders for unpaid subscriptions, it has been held in a few jurisdictions that knowledge or want of knowledge that the stock of a corporation is in part unpaid does not affect their liability."

We think these two general propositions state what has been held by numerous decisions in many jurisdictions. However, we believe the first proposition is supported by the weight of authority. We will not at-

tempt to discuss the different holdings in the different states upon this proposition. Conflicting statements may be found in some of the cases, but we think the following authorities support in principle the general conclusion which we have here reached. Sherman v. Harley (Cal.) 7 A. L. R. 950; First Nat. Bank v. Gustin Minerva Co. (Minn.) 44 N. W. 198; Hospes v. Northwestern Mfg. & Car Co. (Minn.) 50 N. W. 1117; Bobb v. Walmar Theatre Co. (Mo.) 227 S. W. 843; Baldwin v. Timber Investment Co. (N. D.) 176 N. W. 662; McAlester v. American Hospital Ass'n (Ore.) 125 Pac. 287; Connor v. Robinson (Wash.) 243 Pac. 849, 246 Pac. 758.

We do not say that all of the cases above cited are directly in point, but we think a careful examination of each of these cases will disclose that the conclusion which we have here reached is supported at least in principle. It is, of course, true that some of these cases are under different statutes and different constitutional provisions, some of them without constitutional provisions and some without statutes. We would call especial attention, however, to the cases of Hospes v. Northwestern Mfg. & Car Co. and Baldwin v. Timber Investment Co., supra. These cases are decided pursuant to a statute almost identical, if not identical, with ours. A different state of facts, of course, is presented in each case, but we think a careful reading of each of them will support our conclusion.

However, there are a number of states holding that the liability of a stockholder or the creditor's right to benefit is not based upon the fact of whether the creditor had knowledge of the manner in which the stock was issued. Some of the opinions so holding are as follows: Easton Nat. Bank v. American Brick & Tile Co. (N. J. Eq.) 64 Atl. 917, 8 L. R. A. (N. S.) 271; DuPont v. Ball (Del.) 106 Atl. 39, 7 A. L. R. 975; Rosoff v. Gilbert Transportation Co., 221 Fed. 972 (the Conn. law involved). We will not attempt to discuss these opinions more than to say that among the ones cited, the case of Easton Nat. Bank v. American Brick & Tile Co., supra, is perhaps the most outstanding and the best considered case.

It will be seen from a careful consideration of the many cases, that there have arisen in the United States at least two theories by which stockholders are held liable for their unpaid stock. One of these theories is based upon fraud; that is, the stockholder has held out to the public that he has paid for his stock in full, and thereby the public and creditors are defrauded into relying upon assets of the corporation which it does not have. The other theory is based upon the proposition that the stock which has been issued has not been paid for, and is therefore an asset of the corporation and can be collected by the corporation.

If the cases are carefully read, we believe that all of the decisions, which hold contrary to the views here expressed, are based upon the contract or assets theory, and that the stockholder is actually liable to the corporation. In the case of Easton Nat. Bank v. American Brick & Tile Co., supra, it appears that the liability of a stockholder is held to exist in favor of the creditor with notice, "because it existed in favor of the corporation."

The fraud theory has been variously defined as the trust fund or fraud theory. We are not concerned with the various definitions that have been given, but we think in most of the states, where a stockholder has been held liable for his unpaid stock, that those states recognize the stockholder is also liable to the corporation, or at least do not base the liability upon fraud. In this state it is based upon fraud. We have also held that stock issued without consideration is not an asset of the corporation.

Some of the opinions above cited refer to cases where a contract has been made for the stock, and the validity of that contract is presented. We call attention to the fact that in the case at bar there is no such question presented, and we do not pass upon that particular point. This is a suit brought to enforce the liability claimed to arise from the fact that the stock was issued to the defendant without having been fully paid for, and not a suit brought upon the promise to pay for the stock.

It is the further contention of the plaintiff that our construction of the statute (sec. 5345, supra), in effect, destroys the same as any effective remedy for a creditor; that, as a practical result of our construction, a creditor will in almost all cases be denied any relief because the certificate holder will always present some evidence showing the creditor had notice that his shares were issued without being paid for in full, and that the jury will be inclined to believe such testimony and relieve the stockholder from liability.

It may be true that our construction makes the statute, in effect, simply a declaration of the common law as it existed at the time the statute was adopted. But this is not unusual; many of our statutes are

no more than declarations of the common law. The construction heretofore placed upon the statute says that it is based upon fraud, and if a creditor has notice before he enters into a contract, we cannot conceive how he could thereby be defrauded. As to the contention of plaintiff, that juries will be inclined to believe the statements of the stockholder that a creditor did have knowledge of the issuance of the stock, we are of the opinion that this is based upon pure speculation. For the purposes of the question involved, we must assume that the trial court, or the jury, under the direction of the court, will arrive at the right conclusion as to the facts. The law certainly cannot be changed or modified purely on the assumption that some may testify falsely.

Under the second proposition, it is contended that, even under the rule as above indicated, in this case there is no evidence to support the finding of the lower court that Collier knew that Edwards and the others had not paid for their stock in full. Under this assignment, it is argued by the plaintiff that the rule to be applied in cases of this kind is not the same as that which is applied where questions of fact are presented to a jury or to the court, where a jury is waived. Plaintiff does not contend that this is a case in which this court will examine the testimony and determine whether or not the finding of the court is against the clear weight of the evidence; but insists that, in cases of this kind, a different rule should be applied than the general proposition that, if there is any testimony reasonably tending to support the finding of the trial court, the same will not be set aside on appeal.

We are of the opinion that the proper rule in the instant case is that, if there is any evidence reasonably tending to support the finding and judgment of the trial court, the same will not be reversed. However, we have carefully examined the entire record in this case, and are unable to say that the finding and judgment is against the clear weight of the evidence.

The record discloses that Collier entered into his contract with Salmon, Guyer and Rogers prior to the organization of the corporation; that he attended at least one of the pre'iminary meetings leading up to the company's organization; that according to one witness, at least, he knew all about the organization and the manner in which the stock was issued. Stock in the amount of $67,000 was issued to Collier. True, it was only to be held as collateral security for his debt, but he undoubtedly knew that this particular stock had not been paid for. There are other circumstances, but we think it unnecessary to attempt a minute statement of what the evidence shows. From an examination of the entire record we think the same is sufficient, and that the finding and judgment of the trial court is not against the clear weight thereof.

The third and last proposition concerns the statute of limitations. Owing to our finding on the first two propositions, it becomes unnecessary to decide this question.

The judgment of the lower court is affirmed.

TEEHEE, LEACH, REID, and HALL, Commissioners, concur.

By the Court: It is so ordered.