**W. L. STONE, as Trustee of the Estate of Bassett & Company, a corporation, bankrupt, Plaintiff,**

**v.**

**L. E. HUDGENS, Defendant.**

**Civ. A. No. 6106.**

United States District Court, W. D. Oklahoma.

Feb. 21, 1955.

274

McClelland, Kneeland, Bailey & Mc-Clelland, Oklahoma City, Okl., for plaintiff.

Robert D. Crowe, Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, W. L. Stone, as Trustee of the Estate of Bassett & Company, a (Oklahoma) corporation, bankrupt, brings this action against the defendant, L. E. Hudgens, an officer and director of such corporation, to collect $5,000 for 50 shares of stock issued to the defendant but for which defendant never paid.[1] This sum was carried on the corporate books as "subscriptions receivable"; and, plaintiff urges that as trustee he is entitled to collect such amount for the benefit of creditors inasmuch as this receivable was one of the assets relied up-

---

1. The common stock in question had a par value of $100. The defendant paid in $10,000 and received 100 shares as evidenced by Certificate No. 3. The 50 shares in controversy are represented by Certificate No. 4 and were issued without payment by the defendant. All certificates were dated January 3, 1950 and delivered January 30, 1950.

on by the various creditors in extending credit to the bankrupt company.[2]

After careful consideration the Court has concluded that the defendant is not legally obligated to pay for the said 50 shares for the reason that under the Oklahoma Constitution [3] and interpretative decisions, the attempted stock issue was an absolute *nullity* giving rise to neither rights nor liabilities.

Although the Court's attention has not been called to any Oklahoma decision directly in point, the decisions construing the force and effect of the language of the pertinent constitutional provision unmistakably imply that where stock is issued for a consideration less than the stock's par value, the issue is *void* and the stock certificate cannot serve as consideration to support the would-be stockholder's promise to pay.[4]

The Court has reached the conclusion that the instant obligation is uncollectible rather reluctantly inasmuch as a number of well reasoned decisions in other jurisdictions dealing with similarly worded constitutional prohibitions have not permitted a subscriber, such as the defendant, to use the constitutional provision solely to negate his own personal promise to pay.[5] However, the Oklahoma Court has unhesitatingly found all such attempted issues to be void with no rights or liabilities attaching [6] except where the unfulfilled promise of the subscriber works a fraud upon innocent third persons.[7] This exception is ex-

2. The $5,000 owed for the stock described by Certificate No. 4 was set up as a receivable on the books and records of the corporation, the corporation's tax statements, the minute book of the Corporation, and was included in all financial statements given to creditors and credit agencies.

3. Okl.Const. Art. 9, § 39 provides in part: "No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void * * *."

4. In Southwestern Tank Co. v. Morrow, 1925, 115 Okl. 97, 241 P. 1097, the Court held that unsecured promises to pay, evidenced by promissory notes, given for corporation stock issued by an Oklahoma corporation do not constitute " 'property actually received' " under the Oklahoma Contitution, and where such corporation stock is issued and delivered for such promises to pay, the issue of stock is spurious and void, and constitutes no consideration for such promises to pay. Also read Hirschfeld v. McKinley, 9 Cir., 1935, 78 F.2d 124, arising out of Arizona where the Court held that a Trustee in bankruptcy of bankrupt corporation could not maintain action ex contractu against purported stockholder in form of assessment and call based upon attempted issue of shares, where stockholder paid $350 for stock having par value of $24,900 and hence issuance of stock was void for insufficient consideration under public policy of Arizona. See also General Beverages, Inc. v. Rogers, 10 Cir., 1954, 216 F.2d 413, where the Court held that under Alabama law, an agreement to issue stock for a promissory note is void as against public policy, and note given pursuant to such an agreement was void and unenforceable. Distinguish Harn v. Smith, 1921, 85 Okl. 137, 204 P. 642, where note was secured by a first mortgage on realty.

5. Read Bell v. Aubel, 1943, 151 Pa.Super. 569, 30 A.2d 617, where the Pennsylvania Court held that the Constitutional prohibition against issuance by corporation of stock except for money, labor done, or money or property actually received was intended to protect corporation and its creditors by preventing acquisition of stock except upon lawful payment and was not intended to afford a shield for a stockholder who has not paid for his stock. Accord, Pacific Trust Co. v. Dorsey, 1886, 72 Cal. 55, 12 P. 49, 13 P. 148. Also, read Joy v. Godchaux, 8 Cir., 1929, 35 F.2d 649.

6. See for example Webster v. Webster Refining Co. of Okmulgee, 1912, 36 Okl. 168, 128 P. 261, 47 L.R.A.,N.S., 697, where it was held that a contract between a corporation and its promoter, providing for the issuance to him of capital stock of the corporation in violation of the Constitutional provision in question would not be enforced nor would damages be awarded for the breach thereof. Also, see Lee v. Cameron, 1917, 67 Okl. 80, 169 P. 17.

7. As ruled in Paxton v. Hyer, 1939, 184 Okl. 407, 87 P.2d 938, an action under section 127 (superseded by present section 1.83) imposing individual liability on stockholders for debts of corporation to

emplified where a third person in reliance upon the fraudulent representation that all issued stock is paid up changes his position to his detriment in reliance upon such misrepresentation.

■ In the instant case although it may well be that the creditors in question did rely on the $5,000 "subscriptions receivable" as one of the assets of the corporation in extending credit to such company, no element of fraud exists. At the time of all extensions of credit all creditors were apprised that of the $35,-000 issued capital stock, $5,000 was unpaid. Any reliance by such creditors was at most predicated upon a misapprehension of the legal collectability of this listed receivable and did not result from a fraudulent concealment of the true nature or value of the company's corporate structure.[8]

■■ The Court has also considered whether the defendant has a statutory liability arising out of 18 Okl.Stat.1951 § 1.83; and, has concluded such section to be inapplicable to the instant facts. Such section is not intended to cover the problem of the issuance of stock pursuant to a promise to pay in the future where such issued stock is not held out as fully paid but said statute has for its purpose the prevention of a working of fraud due to either a careless or deliberate overvaluing of a corporation's capital structure, by any "directors or shareholders" who "grossly overvalue property or services received by the corporation as consideration for shares allotted".[9]

The defendant is entitled to judgment. Counsel should submit a journal entry which conforms with this opinion within fifteen days.

extent of amount unpaid on stock held by stockholders was based on fraud, and hence the two-year statute of limitations was applicable.

8. Cf. Collier v. Edwards, 1930, 144 Okl. 69, 289 P. 260, 261, 69 A.L.R. 874, where the Court said: "under the law in this state a creditor, who has contracted a debt with a corporation with full knowledge that the shares of stock issued were not paid for in full, as provided by section 39, article 9, of the Constitution, cannot recover under section 5345 (now repealed) from the holder of such certificate of stock, although the same has not been paid in full or only partially paid for."

9. Read footnotes 7 and 8, supra.